**Alfred E. ALLEN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–245.**

United States Court of Veterans Appeals.

March 17, 1995.

Michael P. Horan and Kathryn D. Russiello were on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Adrienne Koerber, Deputy Asst. Gen. Counsel, and Michele R. Katina, Washington, DC, were on the brief, for appellee.

George T. Estry (non-attorney practitioner) was on the brief, for Veterans of Foreign Wars as amicus curiae.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS, and STEINBERG, Judges.

KRAMER, Judge, filed the opinion of the Court. FARLEY, Judge, filed a dissenting opinion in which NEBEKER, Chief Judge, joined. HOLDAWAY, Judge, filed a separate dissenting opinion.

KRAMER, Associate Judge:

The appellant, Alfred E. Allen, appeals a November 19, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to service connection on a secondary basis for osteoarthritis of both hips and of the left knee. The Court has jurisdiction under 38 U.S.C. § 7252(a). For the reasons set forth below, the BVA decision is vacated, and the matter is remanded for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The appellant had active service from November 1955 to October 1957. Record (R.) at 94. His induction examination was normal. R. at 11–12. Service medical records reveal that in February 1956, the appellant sustained a strain of the paraspinal muscles without any evidence of fracture or dislocation. R. at 38, 43, 46, 71, 88. His separation examination, conducted on August 26, 1957, was normal. R. at 67–68. On August 28, 1957, the appellant sustained a sprain of the medial collateral ligament of the right knee. R. at 52–66.

In August 1967, a VA regional office (RO) denied entitlement to service connection for residuals of a right knee injury, and the appellant did not appeal. R. at 110. Although a February 1988 RO decision once again denied entitlement to service connection for residuals of a right knee injury (R. at 110), the BVA determined that the evidence presented since the unappealed August 1967 rating decision warranted a finding of service connection for residuals of a right knee injury (R. at 113). In June 1989, the RO assigned a 20% rating for traumatic arthritis, right knee, under 38 C.F.R. § 4.71a, Diagnostic Code 5010–5257 (1988). R. at 115.

In September 1989, the appellant's service representative sent the following letter to the RO:

The above-named veteran contacted our office requesting an increase for his service[-]connected right knee condition. He is having a great deal more limitation of motion and pain.

Also, his left hip and left knee are being affected because of favoring his right knee. At his last VA exam, the doctor informed him that because of his service connected right knee, his gait was the primary reason for his left leg problems.

Therefore, we wish to file a claim for service connection for his left hip and knee disability under 38 C.F.R. [§] 3.310 [1989].

R. at 117. That same month, a VA official made the following notation on a VA Form 21–2507, Request for Physical Examination:

The veteran claims left hip & left knee problems are *directly due to or proximately the result of* his [service-connected] right knee condition. Are they, or are they *merely aggravated* by the [service-connected] right knee condition?

R. at 119 (emphasis added). A VA radiologic consultation report, also dated in September 1989, revealed diagnoses of: (1) degenerative joint disease (DJD) in both knees; (2) sclerosis, posteromedial cortex of right femur; (3) DJD in both hips; (4) prostatic calcifications; and (5) atherosclerotic vascular disease. R. at 125. In October 1989, the appellant's service representative informed the RO that the appellant wished "to include service connection for both of [his] hips to [sic] his claim

for service connection due to [DJD]." R. at 123. A VA orthopedic examination report from Dr. Merle McAlevy, also dated in October 1989, revealed the following impressions:

1) Post Traumatic Osteo Arthritis (R) knee—advanced.

2) Osteo Arthritis (L) knee and both hips—Note: *cannot determine for certain if caused by # 1, but condition is definitely aggravated by [service-connected] Arthritis (R) knee.*

R. at 133 (emphasis added). In December 1989, the RO denied entitlement to service connection for the appellant's left knee and bilateral hip conditions on the basis that these disabilities were "not proximately due to or the result of the veteran's service-connected right knee condition." R. at 141. The RO also denied an increased rating for the right knee condition. R. at 139.

Shortly after the RO issued its December 1989 rating decision, the appellant, through his representative, requested reconsideration of the decision, noting that the October 1989 VA examination report indicated that his "arthritis of the right knee aggravated his hips and left knee." R. at 143. He stated that if reconsideration was not possible, then the RO should accept the letter as a Notice of Disagreement (NOD). *Id.* He also supplied the following quotation from MERCK MANUAL 1,196 (14th ed. 1982):

Biomechanical stresses may lead to chondrocyte damage and proteolytic enzyme release resulting in articular cartilage degeneration. Osteoarthritis develops when cartilage repair does not keep pace with degeneration. Osteoarthritis may be secondary to chronic trauma or underlying joint disease. Prevalence is greater in men over age 45.

*Id.* His correspondence was accepted as an NOD, and the RO issued a Statement of the Case (SOC) on the issue of secondary service connection in February 1990. R. at 145–49. Also in February 1990, the appellant submitted a VA Form 1–9, Appeal to the BVA. He stated that the appeal should be resolved in his favor for three reasons: (1) his gait was affected by his service-connected injury; (2) the VA examiner stated that the appellant's

non-service-connected conditions were definitely aggravated by his service-connected right knee condition; and (3) the VA examiner stated that he could not say that the arthritis of the left knee and both hips was not caused by the service-connected right knee condition. R. at 151.

A February 1990 VA progress note revealed an impression of DJD in the left knee and the hips. R. at 163. A March 1990 VA radiologic consultation report stated that x-rays of both knees showed "significant and severe degenerative changes bilaterally with the right greater than the left." R. at 167. The examiner also noted sclerosis of the distal femoral metaphysis of no great clinical significance. *Id.* An April 1990 VA progress note stated that a February 1990 x-ray had shown severe degenerative changes in both knees, right greater than left, and degenerative changes bilaterally in both hips. R. at 155. In May 1990, the RO confirmed and continued the 20% evaluation of the right knee. R. at 171. The RO also continued to deny entitlement to service connection for left knee and hip conditions on the basis that "no *etiology* for the arthritis [of the left knee and hips] was offered." *Id.* (Emphasis added.) In June 1990, the RO issued a Supplemental SOC (SSOC) on the issue of secondary service connection. R. at 174–76.

In August 1990, the appellant's representative submitted a statement to the BVA reiterating that Dr. McAlevy's October 1989 diagnosis had indicated that the appellant's left knee and hip conditions were "definitely aggravated" by the service-connected right knee condition. R. at 182. In September 1990, Dr. James F. Stanosheck, a private physician, wrote a letter to the BVA which stated:

> This letter will certify that [the appellant] has been under my medical care for a number [of] years. He has a degenerative arthritic condition that involves both hips and both knees. He originally injured his right knee while on active duty in the [s]ervice, and he has a [s]ervice-connected disability for the right knee's degenerative condition.
> *Due to favoring his right knee, the patient has subsequently developed degenerative*

*disease involving both hips and, now, the left knee.* This is to the point where he is completely disabled with regard to gainful employment, and he must use a cane for ambulation, particularly when climbing stairs. The patient could be gainfully employed were it not for the degenerative arthritic condition. It would seem that he has developed a *higher degree of disability resulting from his original injury* than he is presently being allotted for.

R. at 188 (emphasis added).

In June 1991, the BVA remanded to the RO the issues of entitlement to service connection for osteoarthritis of both hips and of the left knee, stating as follows:

> The veteran should be examined by a board of two VA orthopedists (who have not previously evaluated him) in order to offer an opinion as to the question of *whether his left knee and hip arthritis was caused by his service-connected right knee disorder.* The <u>claims folder</u> should be made available for review.

R. at 193 (italics added; underscoring in original). In July 1991, a VA official made the following notation on a VA Form 21–2507, Request for Physical Examination:

> The veteran should be examined by a board of two VA orthop[edists] in order to offer an opinion as to whether arthritis of the hips [and] left knee is directly due to or proximately the result of the [service-connected] right knee condition.

R. at 207.

An August 1991 VA radiology report contained impressions of severe arthritis of the right knee and arthritic changes in both hips, but stated that "[t]he left knee show[ed] no significant abnormality." R. at 196–97. That same month, the appellant was examined by Dr. Thull, a VA orthopedist. Dr. Thull's impression was: "Old ligamentous injury (R) knee w/ significant DJD of medial compartment (R) knee and significant DJD bilat[eral] hips." R. at 208. In September 1991, a VA rating specialist made the following notation:

> Return the [VA Form] 2507 for completion. The question ... concerning the

*etiology* of the arthritis in the hips and left knee was not answered.

We asked that the veteran be examined and his records be reviewed by two orthop[edists] but apparently only one looked at him.

R. at 200 (emphasis added).

In December 1991, the appellant was examined by Dr. Bryan D. Bredthauer, a private orthopedic surgeon. Dr. Bredthauer's impression was as follows:

My clinical impression is that this gentleman suffers from post-traumatic [DJD] of his right knee secondary to his old ligamentous injury. He has mild changes of [DJD] present in his left knee which cannot be *ascribed to* that injury.... I suspect that a great deal of his left knee pain is referred pain from his arthritic hip. His bilateral [DJD] of the hips is most likely due to a mild case of slipped capital femoral epiphysis as an adolescent as evidenced by his radiographs.... I am unaware of any study indicating that [DJD] of a knee could be the *etiology* of ipsilateral [DJD] of the hip. The essentially symmetrical degenerative changes found in his hips would argue against his left hip disease being *attributable to* the right knee.

R. at 203–04 (emphasis added).

In February 1992, due to the fact that Dr. Thull had not answered the question posed on the VA Form 2507, Request for Physical Examination, the form was returned to him, and a VA rating specialist made the following notation:

Return the [VA Form] 2507 for completion. The question asked ... was not answered by the VA orthop[edist] ( [i]t was answered by the fee[-]basis orthop[edist] ). The VA orthop[edist] must give his opinion on the question of *etiology* of the left knee and bilateral hip condition.

Make the folder available for review by the orthop[edist].

R. at 211 (emphasis added). In March 1992, Dr. Thull apparently provided the following impressions (*see* R. at 222): (1) DJD, right knee, secondary to previous injury; (2) DJD left knee, "ideopathic [sic]" (defined in DORLAND'S MEDICAL DICTIONARY 815 (27th ed.

1988) as "of the nature of an idiopathy [a morbid state of spontaneous origin; one neither sympathetic nor traumatic]; self-originated; of unknown causation"); (3) DJD, hips, "probably" secondary to slipped capital femoral epiphysis or coxa vara as a juvenile. R. at 211. That same month, the RO issued a confirmed rating decision denying entitlement to service connection for arthritis of the left knee and both hips on the basis that both orthopedists opined that such conditions were "not due to the arthritis in the right knee." R. at 213. The RO issued an SSOC in April 1992. R. at 216–19.

In July 1992, the appellant's representative filed a VA Form 1–646, Statement of Accredited Representation in Appealed Case, expressing the appellant's concern that the RO had not correctly applied the doctrine of reasonable doubt. He argued, in essence, that the RO merely relied on the opinions of the two orthopedists and did not consider the opinions of Dr. McAlevy and Dr. Stanosheck, and that, when these two opinions are added to the others, the medical opinions are split as to the relationship between the right knee condition and the conditions of the left knee and hips. R. at 221–23. In September 1992, the appellant's representative wrote a letter to the BVA pointing out that the December 1991 examination was performed by a fee-basis physician, contrary to the BVA's remand instruction which required the examination to be conducted by a board of two VA orthopedists. The representative also requested that the issue of an increased evaluation for arthritis of the right knee be referred to the RO for adjudication. R. at 225.

## II. APPELLATE BACKGROUND: BVA AND RELEVANT COURT DECISIONS

In December 1991, the Court issued its decision in *Tobin v. Derwinski*, 2 Vet.App. 34 (1991). In *Tobin*, the veteran had appealed a BVA decision which had denied entitlement to service connection for arthritis of the left knee, secondary to a service-connected cavus deformity of the left foot, and which specifically found that the evidence submitted since its prior decision had failed to present a new factual basis for allowing service connection.

The Court held that: (1) the evidence submitted by the veteran was new and material, and thus his claim should have been reopened; (2) the BVA's finding that the service-connected disability did not cause the left knee disability was based upon the BVA's own impermissible medical opinion; and (3) upon remand, the BVA must consider not only the etiological relationship between the two disabilities, but also whether the service-connected left foot disability aggravated the left knee disability. *Id.* at 38–39. With respect to the last of these holdings, the Court stated as follows:

> It may be that appellant's initial arthritis in both his left and right knees is not service-connected and that it is only the increase in the amount of arthritis in appellant's left knee which is secondary to his service-connected left-foot disorder and, therefore, service connected.... 38 C.F.R. § 3.310(a) (1991) states:
>
>> Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be ·considered a part of the original condition.
>
> Appellant has presented statements from at least four physicians to the effect that his left-knee condition is related to his service-connected left-foot condition.... Even if appellant's original arthritis was not caused by appellant's left-foot disorder, the doctors' statements support a finding of aggravation of arthritis in the left knee. That *aggravation constitutes an increase in the disability.* Under [38 C.F.R. §] 3.310(a) *such an increase* in "[d]isability proximately due to or the result of a service-connected disease or injury *shall be service connected."*

*Tobin,* 2 Vet.App. at 39 .(emphasis added except for the final use of the word "increase").

In November 1992, the BVA in the instant case denied entitlement to service connection on a secondary basis for osteoarthritis of the left knee and both hips. The BVA's analysis, which did not address the Court's holding in *Tobin, supra,* consisted of the following:

> The medical evidence of record clearly demonstrates *no etiological relationship between the veteran's service-connected right knee arthritis and the subsequent onset of left knee and bilateral hip arthritis.* In fact, this evidence indicates that the veteran's hip arthritis was a direct result of the mild case of slipped capital femoral epiphysis suffered as an adolescent. This was confirmed by x-ray findings. Moreover, both examiners stated that they could not attribute the veteran's left knee arthritis to his service-connected right knee disability. Therefore, the [BVA] concludes that [the] preponderance of the evidence favors the [conclusion] that the veteran's left knee and bilateral hip arthritis is not *proximately due to or the result of* the veteran's service-connected right knee disability.

R. at 8 (emphasis added).

In February 1993, the Court issued its decision in *Leopoldo v. Brown,* 4 Vet.App. 216 (1993). In *Leopoldo,* the veteran had appealed a BVA decision denying entitlement to service connection for a low back disability, secondary to a service-connected right knee disability. As to the question of a secondary relationship between the two disabilities, the Court, stated as follows:

> The provisions of [38 U.S.C. §] 1110 must be read in the context of the whole statutory scheme. *See* Sutherland Stat. Const. § 46.05 (5th Ed). "[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992).... In the absence of any statutory definition in chapter 11 or in the title-wide definition section 101 of Title 38, U.S.Code, the Court draws pertinent guidance from the statutory definition in 38 U.S.C.[] § 1701(1) ..., which defines "disability" as follows: "The term 'disability' means a disease, injury, or other physical or mental defect." The Court adopts this definition for purposes of construing section 1110. This affords the same meaning to the term "disability" for· purposes of determining eligibility for disability compensation for service-connected disabilities

under chapter 11 as applies for purposes of determining eligibility for health care for such disabilities under chapter 17.

Under this construction, section 1110 provides for disability compensation only for a present "disease, injury, or other physical or mental defect" resulting from "personal injury suffered or disease contracted in line of duty," or for in-service aggravation of a pre-existing disease or injury, but *not for aggravation of a non-service-connected condition by a service-connected condition.*

*Leopoldo,* 4 Vet.App. at 219 (emphasis added). The Court remanded for other reasons, but stated that the veteran was free "to offer additional evidence as to whether his service-connected [right knee] injury caused, rather than merely aggravated, his present back condition." *Id.*

The appellant in the instant case filed a Notice of Appeal in March 1993. On November 3, 1994, the appeal was submitted to the full Court for decision. On November 9, 1994, the Court ordered that the parties each provide a memorandum of law addressing the following question:

Where a claimant's service-connected disability aggravates, but is not the proximate cause of, a non-service-connected disability, is the claimant entitled to service connection for that increment in severity of the non-service-connected disability attributable to the service-connected disability?

In response to the Court's November 9, 1994, order, the appellant, the Secretary, and the Veterans of Foreign Wars (as amicus curiae in support of the appellant) each filed separate memoranda answering the Court's question in the affirmative.

### III.  ANALYSIS

*A.  Issue Necessitating En Banc Review*

The BVA found that the medical evidence in this case "clearly demonstrates *no etiological relationship* between the veteran's service-connected right knee arthritis and the *subsequent onset* of left knee and bilateral hip arthritis." R. at 8 (emphasis added). DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 587 (27th ed. 1988) defines etiology as "the

study or theory of the factors that *cause disease* and the method of their introduction to the host; the *cause(s) or origin of a disease....*" (Emphasis added.) Thus, it appears that the BVA was requiring a causal connection between the service-connected disability and the *"subsequent onset"* of another disease.

A review of the medical evidence of record demonstrates that Dr. McAlevy opined that the arthritis in the left knee and both hips was "definitely aggravated" by the appellant's service-connected right knee condition (R. at 133), and that there are no medical opinions to the contrary. *See* R. at 188, 203–04, 213. (Note: Unless otherwise indicated, the Court will use the terms "aggravation" and "aggravated" as general terms referring to any increase in disability. This is to be distinguished from the more specific form of the term "aggravation" as defined in 38 U.S.C. § 1153, *infra* at part III.A.1., and 38 C.F.R. § 3.306(a) (1994), which authorize compensation for an increase in disability resulting from aggravation during service of an injury or disease which existed before service.) The BVA did not address Dr. McAlevy's opinion in terms of the interpretation set forth in *Tobin,* 2 Vet.App. at 39, requiring that aggravation of a non-service-connected disability by a service-connected disability is, itself, entitled to service connection. *See* 38 U.S.C. § 7104(d)(1); *Gabrielson v. Brown,* 7 Vet.App. 36, 39 (1994) (citing *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990), and holding that the Board, in its statement of reasons or bases, must discuss all material evidence beneficial to the appellant). If the interpretation set forth in *Tobin* prevails, such discussion was necessary. If the interpretation set forth in *Leopoldo,* 4 Vet.App. at 219, prevails, the Court would first be faced with the question whether *Tobin* is nevertheless applicable to this appeal in view of the doctrines announced in *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991) (where the law changes after a claim has been filed or reopened but before the administrative or judicial process has been concluded, the version most favorable will apply unless Congress provided otherwise or permitted the Secretary to provide otherwise and the Secretary did so), and *Bethea v.*

*Derwinski*, 2 Vet.App. 252, 254 (1992) (a panel or single judge may not render a decision which conflicts materially with a previous panel or en banc opinion).

In order to determine which interpretation of the law should prevail, en banc review is required. *See* U.S.Vet.App.R. 35(c) (en banc review is necessary in order to secure or maintain uniformity of the Court's decisions); *Bethea*, 2 Vet.App. at 254 (only the en banc Court may overturn a panel decision). Thus, the question necessitating en banc review in this case is that question (quoted in its entirety, *supra*) posed by the Court in its November 9, 1994, order. For the reasons set forth below, the Court holds that the *Tobin* interpretation of the law prevails. *See Brown v. Gardner*, — U.S. —, —, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994) (citing *King v. St. Vincent's Hospital*, 502 U.S. 215, 220–21, n. 9, 112 S.Ct. 570, 573–74, n. 9, 116 L.Ed.2d 578 (1991)) ("interpretive doubt is to be resolved in the veteran's favor").

Section 1110 of title 38, U.S.Code (found in chapter 11 of that title, which deals with compensation for service-connected disability or death), provides that compensation will be paid for "*disability* resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty," to any veteran who was "discharged or released under conditions other than dishonorable." (Emphasis added.) *See* 38 U.S.C. § 1131; 38 C.F.R. § 3.303 (1994). Section 3.310(a) of title 38, Code of Federal Regulations, which applies to secondary service connection for a disability and which derives from § 1110, provides:

> *Disability* which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition.

(Emphasis added.) As the Court in *Leopoldo* correctly recognized, entitlement to service connection for aggravation of a non-service-connected condition by a service-connected condition rests upon the meaning of "disability" in 38 U.S.C. § 1110. Service connection under 38 C.F.R. § 3.310 (1994) is also controlled by the same meaning of "disability" which is applicable to § 1110.

Before discussing the two possible meanings of "disability" under § 1110, *infra* at III.A.1. and II.A.2., a third alternative has been suggested by a dissenting judge. Simply put, that dissenter's view is that compensation may be awarded under § 1110 only where disability has been incurred in or aggravated by service, and thus neither a second condition attributable to a service-connected condition nor the increase in severity of a second condition attributable to a service-connected condition is itself entitled to service connection. The simple response is that such proposition flies in the face of the statutory language of § 1110 ("disability resulting from ...") which awards compensation based on disability *caused by* a disease or injury incurred in or aggravated by service rather than limiting compensation only to disability actually present in service, i.e., as advanced by the dissent, disability contracted in line of duty.

### 1. Interpretation I: Service–Connected Condition Must Cause Another Condition

In *Leopoldo*, 4 Vet.App. at 219, the Court, pursuant to the analysis quoted in part II, *supra*, interpreted § 1110's use of the word "disability" to exclude the possibility that service connection could be granted and disability compensation could be awarded for aggravation of a non-service-connected condition by a service-connected condition, but instead limited service connection and the payment of disability compensation to situations where a present disease, injury, or other physical or mental defect resulted from a previous injury or disease which is service connected—that is, where the service-connected condition caused the other condition. In so doing, the Court in *Leopoldo* adopted and relied upon the definition of "disability" found at 38 U.S.C. § 1701(1) (disease, injury, or other physical or mental defect).

### 2. Interpretation II: Service–Connected Condition Must Cause or Aggravate Another Condition

A different interpretation of the word "disability," one that would also permit service

connection for aggravation by a service-connected condition of another condition, can also be supported.

Section 1701 expressly states that the definitions in that section are provided "[f]or the purposes of" chapter 17 of title 38, U.S.Code. On the other hand, as correctly acknowledged in *Leopoldo*, Congress did not include a definition of disability among either the title-wide definitions in 38 U.S.C. § 101 or the chapter 11 definitions in 38 U.S.C. § 1101. This is true despite the fact that §§ 101 and 1101 were reenacted simultaneously with § 1701 in the Act of September 2, 1958, Pub.L. No. 85–857, §§ 101, 301, 601, 72 Stat. 1105, 1106, 1118, 1141 (1958). *See also* Veterans' Benefits Act of 1957, Pub.L. No. 85–56, §§ 101, 301, 501, 71 Stat. 83, 88, 94, 110 (1957) (same provisions prior to codification in title 38 of U.S.Code). Because Congress specifically limited the application of the § 1701(1) definition of "disability," it is reasonable to infer that Congress did not intend that definition to control the meaning of "disability" in other parts of the statute. *See U.A. 198 Health & Welfare, Education and Pension Funds v. Rester Refrigeration Service, Inc.*, 612 F.Supp. 1033, 1037 (M.D.La.1985), *aff'd*, 790 F.2d 423 (5th Cir. 1986), *cert. denied*, 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988) (application of a definition found in one part of a statute to a different part of the statute, when Congress has specifically limited the definition to the one part, is not sound statutory construction).

Rather, as argued by the Secretary in his memorandum in response to the November 9, 1994, order of the Court, Congress, in defining "disability," only in and for purposes of chapter 17, most likely intended the definition to apply only to that chapter. Secretary's Memorandum (Mem.) at 8–9. Chapter 17 of title 38, U.S.Code, establishes standards under which a person may be eligible for VA health care and services for a particular "disability," i.e., for the purposes of obtaining treatment for a particular disease, injury, or defect. *See, e.g.*, 38 U.S.C. §§ 1710, 1712. Accordingly, the definition of "disability" in § 1701(1) (disease, injury, or other physical or mental defect) is consistent with the general context and purposes of chapter 17.

The absence of a single generally applicable definition in 38 U.S.C. § 101, which would control the interpretation of that term in other parts of title 38, suggests that the term "disability" may reasonably be interpreted as having different meanings in different parts of title 38. *See Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 608–09, 76 L.Ed. 1204 (1932) (where the subject matter to which words refer is not the same in the several places where they are used, or the conditions are different, the meaning may well vary to meet the purposes of the law). Pursuant to 38 U.S.C. § 1155, the level of compensation payable under chapter 11 is determined according to "the average impairments of earning capacity resulting from [specific] injuries" or "combination of injuries." *See* 38 C.F.R. § 4.1 (1994) (level of compensation paid under chapter 11 is determined according to "the average impairment in earning capacity resulting from [all types of] diseases and injuries [encountered as a result of or incident to military service] and their residual conditions"). Thus, in view of the statutory purpose to compensate veterans based upon degree of impairment of earning capacity, the direction in § 1110 to pay compensation "[f]or disability" resulting from injury or disease may reasonably be construed as a direction to pay compensation for impairment of earning capacity resulting from such injury or disease. *Cf.* 38 U.S.C. § 1153 (authorizing compensation for "an increase in disability" resulting from aggravation during service of an injury or disease which existed before service).

Moreover, in *Hunt v. Derwinski*, 1 Vet. App. 292 (1991), the Court was faced with interpreting 38 U.S.C. § 353 (redesignated without change as § 1153 by the Department of Veterans Affairs Codification Act, Pub.L. No. 102–83, § 5(a), 105 Stat. 378, 406 (1991) (found at 38 U.S.C. § 101 note) [hereinafter § 1153] ), which provides:

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during

such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

*See* 38 C.F.R. § 3.306(a). Specifically, in interpreting the term "disability" in § 1153, the Court stated:

> The term, "disability", as contemplated by the VA regulations, means "impairment in earning capacity resulting from ... [all types of] diseases or injuries [encountered as a result of or incident to military service] and their residual conditions...." 38 C.F.R. § 4.1 (1990)....
>
> Such a definition of "disability" follows the overall statutory and regulatory purpose of the veterans compensation law. This purpose is reflected in the ratings system, which rates different mental and physical maladies based upon diminished earning capacity.... Hence, although "disability" is not defined by [§ 1153] *for compensation purposes,* the regulatory definition adopted [in 38 C.F.R. § 4.1] is a reasonable one.

*Hunt,* 1 Vet.App. at 296–97 (emphasis added). Because both §§ 1110 and 1153 are contained in chapter 11 of title 38, U.S.Code, the *Hunt* decision lends support to the proposition that the term "disability" as used in chapter 11, and specifically in § 1110, should be construed to refer to impairment of earning capacity due to disease, injury, or defect, rather than to the disease, injury, or defect itself. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) ("[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law"). Under this interpretation, the result announced in *Tobin,* quoted in Part II, *supra,* should govern.

### 3. *Resolution of Conflicting Interpretations*

█ The Supreme Court's recent decision in *Gardner, supra,* decided after the issuance of both *Tobin* and *Leopoldo,* provides the Court with critical guidance as to which interpretation should prevail. In *Gardner,* ── U.S. at ──, 115 S.Ct. at 555, the Supreme Court stated that "interpretive doubt is to be resolved in the veteran's favor." Under this language, resolving doubt between interpretations I and II, *supra,* requires that such doubt be resolved in favor of interpretation II, that which is more favorable to the veteran. For this reason, and for the reasons outlined in part III.A.2., the Court holds that the term "disability" as used in § 1110 refers to impairment of earning capacity, and that such definition mandates that *any additional impairment* of earning capacity resulting from an already service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition, shall be compensated. As stated by the Secretary in his memorandum in response to the Court's November 9, 1994, order:

> [T]o the extent [that] such additional disability is literally a result of "personal injury suffered or disease contracted in line of duty," under 38 U.S.C. § 1110, service connection should be established. In such a case, the additional "disability" results from the original service-connected condition.

Mem. at 13–14. Thus, pursuant to § 1110 and § 3.310(a), when aggravation of a veteran's non-service-connected condition is proximately due to or the result of a service-connected condition, such veteran shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. *Cf.* 38 C.F.R. § 3.322 (1994) (in compensating for aggravation of a preservice disability by active service, it "is necessary to deduct from the present evaluation the degree, if ascertainable, of the disability existing at the time of entrance into active service, in terms of the rating schedule ...").

In considering the proposition that the term "disability" in chapter 11 means something different from that term's definition in chapter 17, the Court has considered whether this will produce an undesirable result in terms of VA health-care eligibility under chapter 17. We have concluded that such undesirable result will not occur because dis-

ability for purposes of eligibility for health care continues under this decision to be defined as a disease, injury, or other physical or mental defect regardless of whether there is an impairment of earning capacity. In addition, 38 C.F.R. § 3.310 makes service connection for an increase in disability part of the original service-connected condition, and there is no question that health care under chapter 17 would be available to the veteran for that increase in disability as part of the original service-connected condition.

As stated above, the BVA relied exclusively upon a rule which required an etiological relationship between the appellant's service-connected right knee arthritis and the subsequent onset of arthritis in his left knee and hips. *See* R. at 8. Because the Court has determined that the interpretation announced in *Tobin*, 2 Vet.App. at 39, is the correct standard to be applied, the matter must be remanded to the BVA to determine whether the appellant's right knee arthritis aggravated his left knee and hip arthritis, and, if so, what level of disability is attributable to such aggravation.

### B. Other Issues

#### 1. Etiological Relationship Between Conditions

Each decision of the BVA must contain "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(i); *see Quiamco v. Brown*, 6 Vet.App. 304, 308 (1994); *Wilson v. Brown*, 5 Vet.App. 103, 107 (1993); *Gilbert*, 1 Vet.App. at 56–57. In *Gilbert*, 1 Vet.App. at 57, the Court held that in order to facilitate judicial review, "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." Specifically, in *Gabrielson*, 7 Vet.App. at 40, the Court stated that in each decision, the BVA must "analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant in support of the claim and ... provide a statement of its reasons or bases for rejecting any such evidence." *See also Vecina v. Brown*, 6 Vet. App. 519, 522–23 (1994); *Quiamco*, 6 Vet. App. at 308–09; *Gilbert*, 1 Vet.App. at 59.

■ The BVA found that the medical evidence in this case "*clearly* demonstrates" no etiological relationship between the appellant's service-connected arthritis of the right knee and the arthritis of the left knee and both hips. R. at 8 (emphasis added). However, of the four medical opinions which addressed the etiological relationship between the right and left knee disabilities (the same opinions noted above), one found no etiological relationship (Bredthauer), one found an etiological relationship (Stanosheck), and two could not determine etiology (McAlevy and Thull). Further, of the same four medical opinions, when they addressed the etiological relationship between the right knee and hip disabilities, two found no etiological relationship (Bredthauer and Thull), one found an etiological relationship (Stanosheck), and one could not determine etiology (McAlevy). In view of its failure to address Dr. Stanosheck's medical opinion and to explain its basis for rejecting that opinion, the BVA failed to comply with the requirements of *Gilbert, supra,* and *Gabrielson, supra.*

■ The dissent argues that the BVA already decided the issue of aggravation, that there is a plausible basis for the BVA's decision on that issue, and that there is, therefore, no basis for a remand. However, it is a big stretch of the English language to construe the phrase "no etiological relationship between the veteran's service-connected right knee arthritis and the subsequent onset of left knee and bilateral hip arthritis" as encompassing aggravation, especially considering the use of the word "onset." Further, even assuming that the BVA found that the appellant's service-connected right knee condition did not aggravate his other arthritic conditions, only one doctor (McAlevy) specifically addressed aggravation; he concluded that the non-service-connected arthritic conditions were "definitely aggravated" by the service-connected right knee condition, thus rendering the BVA's assumed finding of no aggravation without an adequate statement of reasons or bases explaining either the finding or the rejection of Dr. McAlevy's

opinion. *See Gabrielson* and *Gilbert,* both *supra.* Finally, even assuming, as the dissent suggests, that both Drs. Bredthauer and Thull determined by implication that the service-connected right knee condition did not aggravate the other arthritic conditions, the Board nevertheless again failed to provide an adequate statement of reasons or bases for why it accepted these opinions and why it not only rejected the opinions of Dr. McAlevy, but also the opinion of Dr. Stanosheck, who, under the dissent's attenuated interpretation that "etiology" somehow subsumes "aggravation," would be understood as having expressed the medical opinion that the service-connected right knee condition aggravated the other arthritic conditions.

The only basis for determining that such a reasons-or-bases deficiency would not be prejudicial to the appellant here (*see* 38 U.S.C. § 7261(b)) (Court must take account of the rule of prejudicial error) would be if there was "overwhelming" evidence in support of the result "reached by the Board." *See Soyini v. Derwinski,* 1 Vet.App. 540, 546 (1991) ("reasons or bases requirement ... in 38 U.S.C. § 7104(d)(1) and more fully discussed in *Gilbert,* [1 Vet.App.] at 56–57, is one requiring strict adherence ... [but not] unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case"). It would be incomprehensible for the Court to conclude on this record that the evidence against the claimant (one VA and one private physician's opinion) was "overwhelming" in the face of the evidence in support of the claimant (one VA and one private physician's opinion). Thus, even under the dissent's view of this case, a remand would still be in order.

### 2. Unemployability

In his September 1990 letter to the BVA, Dr. Stanosheck opined that the appellant is "completely disabled with regard to gainful employment" due to a combination of his arthritic conditions. R. at 188. Thus, in the event that the BVA, upon remand, concludes that the appellant is entitled to service connection for any additional disability resulting from his service-connected right knee condition, it must determine whether the appellant is entitled to a total disability rating based on individual unemployability. *See* 38 C.F.R. § 4.16 (total disability rating may be assigned when the veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities).

### IV. CONCLUSION

Upon consideration of the record, the filings of the parties, and the above analysis, the Court VACATES the November 19, 1992, decision of the BVA and REMANDS the matter for further proceedings consistent with this opinion. Upon remand, the appellant is free to submit additional evidence and argument, *see Quarles v. Derwinski,* 3 Vet. App. 129, 140–41 (1992), and the BVA is free to obtain another medical examination, *see Green v. Derwinski,* 1 Vet.App. 121, 123–24 (1991).

FARLEY, Associate Judge, with whom NEBEKER, Chief Judge, joins, dissenting:

Had the issue been properly presented in this appeal, I would have agreed with the majority's reaffirmation of *Tobin v. Derwinski,* 2 Vet.App. 34 (1991). With the clarity of 20/20 hindsight, I now see two problems with *Leopoldo v. Brown,* 4 Vet.App. 216 (1993).

First, it was error to apply a definition explicitly lodged in 38 U.S.C. § 1700 "[f]or purposes of this chapter" to all chapters of title 38. The stated reason, i.e., that the term "disability" would have the same meaning for purposes of both chapters 11 and 17, is a self-fulfilling prophecy, not a legal justification. The Court interposed its own judgment without even paying lip service to the Secretary's interpretive regulations. *See Blanchard v. Derwinski,* 3 Vet.App. 300, 303–05 (1992) (Farley, J., concurring).

Second, I agree with the majority and the parties that when a non-service-connected disability is increased because of a service-connected disability, that increase is itself entitled to service connection. If the issue is presented squarely in some future case, an unlikely event in view of the Secretary's express statement of acquiescence in *Tobin* here, the Court may well have to overrule *Leopoldo* someday. Today, however, is not that day.

The BVA, in its "REASONS AND BASES FOR FINDINGS AND CONCLUSIONS," took explicit note of Dr. McAlevy's 1989 conclusion that the appellant's left knee and hip "conditions were definitely aggravated by his service-connected right knee." R. at 7. Nevertheless, the BVA then found "no etiological relationship between the veteran's service-connected right knee arthritis and the subsequent onset of left knee and bilateral hip arthritis." R. at 8. In that same paragraph, the BVA concluded "that [the] preponderance of the evidence favors the consclusion [sic] that the veteran's left knee and bilateral hip arthritis is not proximately due to or the result of the veteran's service-connected right knee disability." Id.

In its rush to reach the Tobin/Leopoldo issue, the majority latches onto the word "onset" but ignores both the Board's specific cognizance of the appellant's claim of aggravation and its comprehensive conclusion of no causation. Then, apparently finding something in a definition of "etiology" that escapes me, the majority states: "Thus, it appears that the BVA was requiring a causal connection between the service connected disability and the 'subsequent onset' of another disease." Ante at 445 (emphasis in original). That, however, is not how it "appears" to me.

The BVA's use of the present tense demonstrates that the BVA found no causal relationship between the appellant's service-connected condition (right knee) and his current non-service-connected arthritis of the left knee and hips. Since a current disability can only be the sum of the initial disability ("onset") and any incremental changes, the Board's definitive conclusion that the appellant's current left knee and hip arthritis are "not proximately due to or the result of" the service-connected right knee disability necessarily embraced any claim of aggravation.

I would not have reached the Tobin/Leopoldo issue because I would have affirmed the BVA decision. In my view, the opinions of Drs. Bredthauer and Thull provide a plausible basis for the Board's findings and conclusions and its "reasons or bases" satisfy the requirements of 38 U.S.C. § 7104(d)(1). Even if one were inclined toward the majori-

ty's view that the BVA's "reasons or bases" concerning causation were inadequate, a remand for that specific reason hardly constitutes a license to slay dragons which do not presently exist and may never exist in this matter. The Court today is rendering an impermissible advisory opinion on the Tobin/Leopoldo issue because it does not arise in the context of a concrete case or controversy; the issue simply is not ripe for resolution. For this reason, I am compelled to dissent.

HOLDAWAY, Associate Judge, dissenting:

I entirely agree with Judge Farley in his conclusion that there is no case or controversy before the Court vis-a-vis the "issue" of post-service aggravation of a post-service injury. Hence the attempt to "reach" for a nonexistent "issue" to resolve the conflict between the Tobin case and the Leopoldo case should be saved for another day when, and if, the issue is presented to the Court. That may never be, in light of the Secretary's concession in this case adopting the Tobin result. Presumably the Secretary's position in this litigation will be made known to those responsible for the administrative adjudications below. That being said, I am constrained to say that in my opinion neither the Leopoldo analysis nor the wholly new analysis, which is entirely based on the assumption that either the Tobin result or the Leopoldo result must be adopted, is correct. I say this with some degree of diffidence as the author of the opinion in Leopoldo (to which Judges Kramer and Steinberg concurred without exception). Since my two colleagues are persuaded by a new and different analysis, I presume it is permissible for me to have second thoughts as well.

First, some comments about those two cases. In Tobin the "issue" was neither raised nor argued before this Court, nor, interestingly enough, had it been raised at the RO level or before the BVA. Despite the fact that the "issue" had not been raised at the RO, the BVA, or this Court, the Court, sua sponte, really almost as an afterthought and with virtually no analysis, assumed that post-service aggravation of a non-service-connected condition by a service-connected con-

dition was compensable. In *Leopoldo,* as in *Tobin,* the "issue" likewise was not raised before the RO or the BVA, nor raised on appeal to this Court, but was picked up sua sponte by the Court. There was at least an analysis in *Leopoldo,* however flawed some (including myself) now think it to be, that at least explained the decision. Moreover, this analysis had the virtue of reconciling the definition of disability as it applies to compensation with the definition as it applies to treatment. Parenthetically, I must say I fear that the disparate definitions adopted by Judge Kramer will, despite his optimism to the contrary, create confusion and result in some unintended consequences. Whether a better analysis or not, *Leopoldo* was in conflict with *Tobin,* a previous precedential opinion of this Court. The "whys and wherefores" of how this happened, while interesting, are not germane to the case before us now except to the unfortunate extent that it has developed a mindset that this is an "either/or" situation. Either *Leopoldo* is right or *Tobin* is right. After further research and reflection, I now think they are both wrong.

Veterans benefits are a matter of positive law. If the law does not provide a benefit in a given fact situation there is no benefit. It is that simple. Compensation for disability is payable only in circumstances specifically provided for by statute or by regulation consonant with statute. *See OPM v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Neither the Secretary nor this Court can create a remedy out of whole cloth that is not provided for in the statute. Certainly a remedy cannot be fashioned that is contrary to statute. The relevant statutory language is simple and direct and provides as follows: "For disability resulting from personal injury suffered or disease contracted *in line of duty,* or for aggravation of a *preexisting* injury suffered or disease contracted in line of duty, in the active military...." 38 U.S.C. § 1110 (emphasis added). The statute is silent, absolutely silent, about post-service aggravation (whatever the cause) of a post-service injury. In fact, the plain language of the statute, by linking injury *and* aggravation to periods when the claimant was in the line of duty, precludes compensa-

tion for such injury. Insofar as it speaks to aggravation at all, the statute clearly and unambiguously limits compensation to *in-service* aggravation of *preexisting* injuries.

Congress could have easily provided for the post-service aggravation situation now before us. Perhaps it should have. That is a matter for legislative policy makers, not judicial usurpation by this Court. We can only assume that if Congress had intended to provide compensation for post-service injuries or aggravation it would have done so by specific legislation as it did for service aggravation of preservice injuries. Any attempt to provide a remedy not contemplated by the statute is judicial law making, pure and simple. Moreover, it flies in the face of the express statutory language that the injury, or in the case of *preexisting injuries only,* its aggravation, must be incurred during active service while "in the line of duty." In this case even if the appellant's post-service injury was aggravated by his in-service injury it is clear beyond any doubt that this aggravation postdated active service by many years and, a fortiori, could not have possibly been incurred "in line of duty." Only a statutory provision similar to that which is applicable to line of duty aggravation of preservice injuries can provide a remedy for an injury or its aggravation that is not incurred in line of duty. At such time as a case or controversy properly presents this issue to the Court, I will urge that an en banc Court overrule both *Tobin* and *Leopoldo* and decide the case by simply reading, as the *Gardner* case cited by the majority enjoins us to do, the plain language of the statute.