http://www.va.gov/vetapp16/Files3/1621759.txt

Citation Nr: 1621759 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 11-04 736 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California

THE ISSUES

1. Entitlement to service connection for a right knee disability, including as secondary to a service-connected left knee disability. 

2. Entitlement to service connection for a left leg venous disability, to include varicose veins, deep vein thrombosis and post-phlebitic syndrome.

3. Entitlement to a total disability rating based on individual unemployability (TDIU). 

REPRESENTATION

Veteran represented by: California Department of Veterans Affairs

WITNESS AT HEARING ON APPEAL

The Veteran
ATTORNEY FOR THE BOARD

Tracie N. Wesner, Associate Counsel

INTRODUCTION

The Veteran served on active duty from September 1960 to September 1962.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from January 2010 and May 2010 rating decisions from the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana. During the pendency of the appeal the Veteran's claim was transferred to the RO in Oakland, California. 

This matter was previously remanded by the Board in December 2014 and October 2015. The Veteran presented sworn testimony at a hearing before the undersigned in December 2015. A transcript of that hearing is of record.

The Board notes that the Veteran's claim of entitlement to service connection for a right knee disability was initially denied in a May 2010 rating decision, to which the Veteran submitted a timely Notice of Disagreement (NOD) in March 2011. In September 2013 the RO issued a rating decision denying the Veteran's claim on the basis that new and material evidence had not been submitted; however, because a timely NOD had been submitted, the matter was placed in appellate status. Thus, the May 2010 rating decision is the proper decision on appeal. See Tablazon v. Brown, 8 Vet. App. 359, 361 (1995). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

During his December 2015 Hearing before the Board, the Veteran testified that his left knee disability has worsened since his most recent VA examination, which took place in March 2015. See December 2015 Hearing Tr. at 6-8. The Board interprets the Veteran's testimony as an intent to file a claim and refers the issue to the RO for appropriate action.

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

The Veteran's right knee disability is caused by his service-connected left knee disability.

CONCLUSION OF LAW

The criteria for service connection for a right knee disability have been met. 38 U.S.C.A. §§ 1131, 1112, 1154(a), 5107 (West 2014); 38 C.F.R §§ 3.102, 3.303, 3.310 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran seeks service connection for a right knee disorder. He contends that he has right knee osteoarthritis as a result of an injury he sustained while playing football in service. Alternatively, he argues that his right knee disorder is caused by his left knee anterior cruciate ligament (ACL) tear. 

The Board finds that service connection for a right knee disability is warranted. Service connection may be established on a secondary basis for a disability that is proximately due to or aggravated by an already service-connected disorder. See 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

Here, both elements are met. The Veteran is diagnosed with right knee tricompartmental osteoarthritis. See March 2016 Opinion Letter of Dr. A.J.M. As noted above, he is service connected for a left knee ACL tear that occurred while playing football in service. He reported favoring his left leg, putting additional strain on his right knee and leading to recurrent pain. See December 2015 Hearing Tr. at 12; see also March 2016 Written Statement. In a March 2016 written statement, his friend D.B. stated that he has known the Veteran since 1971, and that since that time the Veteran has consistently complained of right knee pain that has worsened over the years. The Veteran and D.B. are competent to give testimony as to the symptoms they observed, and the Board finds their reports credible. See Layno v. Brown, 6 Vet. App. 465 (1994). Finally, the Veteran's treating VA physician, Dr. A.J.M. opined that his right knee tricompartmental osteoarthritis is caused by his service-connected left knee disability. Dr. A.J.M. stated that the Veteran sustained a left leg ACL tear during a football practice in service, and that this initial left leg injury has affected his right knee through his life. Dr. A.J.M. noted that the Veteran's left ACL tear was untreated for years, and thus affected the performance of the compensating right knee by association. The Board notes that Dr. A.J.M has been the Veteran's treating provider for the last 24 years, and reviewed his medical records prior to providing this opinion. The Board finds this opinion highly probative as contains clear conclusions with supporting data and a reasoned medical explanation connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The Board notes that there are no negative nexus opinions of record. As all elements necessary to establish service connection are satisfied, service connection for a right knee disability is granted. 

ORDER

Service connection for a right knee disability is granted.

REMAND

The Veteran's claim of entitlement to service connection for a left leg venous disorder must be remanded to afford him a new VA examination. The Veteran seeks service connection for a left leg venous disorder. He has been diagnosed with varicose veins, deep vein thrombosis (DVT) and post-phlebitic syndrome. See March 2015 VA Examination Report. He contends that his left leg venous insufficiency is due to the injuries he sustained in service while playing football. Alternatively, he argues that his disorders are due to his service-connected left ACL tear. 

In his March 2016 written opinion letter, Dr. A.J.M. stated that the Veteran has been treated for multiple episodes of deep venous thrombosis since the late 70s "as a result of varicose veins present since the early 60s." No rationale was provided for this opinion. Moreover, it is unclear from the record when the Veteran first observed varicose veins or any venous disorder or venous insufficiency. 

The Veteran was afforded a VA examination in March 2015, and the VA examiner opined that his left leg DVT was not incurred in or caused by his military service, including the conceded football related injury. The examiner reasoned that the Veteran has left leg DVT that was diagnosed sometime in the late 1980s, at least 15 years after his separation from service. The examiner further noted that there are no medical records to indicate that his DVT condition was present at any time during service or within one year of separation. The examiner did not address whether the Veteran's left leg varicose veins or post-phlebitic syndrome had their onset in service or whether left leg varicose veins resulted in the left leg DVT. Thus, the Board finds that a new VA examination and medical opinion should be obtained. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

The Veteran's claim of entitlement to a TDIU is inextricably intertwined with the remanded claim, as well as the initial rating to be assigned for his now service connected right knee disability. Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). Thus, a decision by the Board on the Veteran's claim for a TDIU would, at this point, be premature. See Tyrues v. Shinseki, 23 Vet. App. 166, 177 (2009) (en banc). 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain all outstanding VA treatment records. 

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed of his in-service and post-service symptoms related to left leg varicose veins, DVT or venous insufficiency. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

3. After the above development had been completed, schedule the Veteran for a VA examination to address the current nature, onset and etiology of any left leg venous disorders found to be present, including varicose veins, DVT and post-phlebitic syndrome. The entire claim file should be reviewed by the examiner and all necessary tests should be performed.

After a review of the relevant medical records and examination of the Veteran, including the taking of a detailed history, the examiner should respond to the following:

As to any diagnosed condition, including varicose veins, DVT and post-phlebitic syndrome, provide an opinion as to whether it is at least as likely as not that the disability:

(i) had its onset in service or within one year of separation; 

(ii) is related to military service, including the conceded football related injury; or 

(iii) is related to the Veteran's service-connected left knee ACL tear. 

The examination report must reflect consideration of both the medical and lay evidence of record, including the Veteran's lay statements concerning the onset and recurrence of his symptoms and Dr. A.J.M.'s March 2016 opinion that the Veteran's DVT is a result of his varicose veins.

If the examiner feels that a requested opinion cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e., no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e., additional facts are required, or the examiner does not have the needed knowledge and training). 

4. After completing the requested development and any further development deemed necessary, then readjudicate the remanded issues, including entitlement to a TDIU. If any of the benefits sought on appeal remain denied, furnish the Veteran and his representative with a Supplemental Statement of the Case and afford them the opportunity to respond before the file is returned to the Board for further consideration.

The Veteran has the right to submit additional evidence and argument on matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs