Citation Nr: 1761197 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 15-32 299 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUE

Entitlement to service connection for human immunodeficiency virus (HIV).


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

N. Rasool, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 2005 to June 2009.

This case comes before the Board of Veterans' Appeals (Board) from a November 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Augusta, Maine. Jurisdiction of the case was later transferred to the RO in New York, New York (hereinafter Agency of Original Jurisdiction) (AOJ)).

In January 2017, the Veteran testified at a Board hearing before the undersigned Veterans Law Judge at the Central Office in Washington, D.C. A transcript of the hearing is associated with the electronic claims file.

In June 2017, the Board remanded the appeal for further development.

In November 2017, the Board sought expert opinion from the Veterans Health Administration (VHA) on the issue of entitlement to service connection for HIV. An opinion was received in December 2017. As this opinion is fully favorable to the Veteran, the Board will proceed to adjudicate the claim on the merits rather than delay the case to provide the Veteran a copy of the opinion letter with an opportunity to respond.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).


FINDING OF FACT

The most probative evidence of record demonstrates that the Veteran's current HIV manifested in service and is etiologically related to service.




CONCLUSION OF LAW

The criteria for service connection for HIV are met. 38 U.S.C. § 1110 (2012); 38 C.F.R. § 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Given the favorable nature of the Board's decision, a discussion of VA's compliance with VCAA notice and assistance requirements is not necessary.

Generally, service connection may be established for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). In order to establish service connection, the following must be shown: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). A disability may be found service-connected on a secondary basis by demonstrating that the disability is either (1) proximately due to or the result of an already service-connected disease or injury or (2) aggravated by an already service-connected disease or injury. See Allen v. Brown, 7 Vet. App. 439, 448 (1995); 38 C.F.R. § 3.310.

Direct service connection may be granted only when a disability was incurred or aggravated in line of duty, and not the result of the Veteran's own willful misconduct. 38 U.S.C. § 105(a). A disease or injury that is the result of the Veteran's own willful misconduct is not one incurred or aggravated in the line of duty. 38 C.F.R. § 3.1(n). Willful misconduct means an act involving conscious wrongdoing or known prohibited action. 38 C.F.R. § 3.1(n). 

Direct service connection for a disability that is a result of a claimant's own abuse of alcohol or drugs is precluded for purposes of all VA compensation benefits for claims filed after October 31, 1990. 38 U.S.C. §§ 105, 1131; 38 C.F.R. § 3.1(m)-(n), 3.301.

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a); Layno v. Brown, 6 Vet. App. 465, 470 (1994). Lay evidence can also be competent and sufficient evidence of a diagnosis if (1) the medical issue is within the competence of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

If the evidence is competent, the Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

The Veteran asserts that he contracted HIV during service. He testified that he had unprotected sex during service and the sexual contact, and not drug use, ultimately resulted in his HIV infection. 

It is not disputed that the Veteran was diagnosed with HIV while in service. The Veteran's September 2005 enlistment exam report indicates he was negative for HIV at the start of service. A July 2015 RO request for VA medical opinion further states the Veteran was found negative for HIV in March 2006 and November 2006. Subsequent service treatment records show the Veteran was first notified of his HIV diagnosis in June 2008.

The record documents the Veteran's history of drug and alcohol abuse. July 2008 treatment records show that the Veteran sought medical treatment after learning of his HIV infection while on leave in June 2008. It was noted that the Veteran responded to the diagnosis by using heroin and crystal meth for a period of two and a half weeks. The Veteran reported that he had not used needles for four years prior to the drug binge and that he engaged in unprotected sex while on R&R leave from a deployment in East Africa.

The Board acknowledges the Veteran's statements that he contracted HIV from unprotected sex. Indeed, he is competent to report having unprotected sex or engaging in intravenous drug use. However, identifying the mode of HIV transmission involves a complex medical issue that the Veteran is not competent to address. He has no way of knowing, and has not provided evidence establishing he actually was infected with HIV through unprotected sex, nor has he been shown to have the medical training or expertise to render a competent opinion as to whether he may have contracted HIV in the manner alleged, as this is a determination that is too complex to be made based on lay observation alone. See Jandreau v. Nicholson, 492 F. 3d 1372, 1376-77 (Fed. Cir. 2007).

Accordingly, VA sought medical opinions discussing, in part, the Veteran's contentions.

In an October 2013 examination report, a VA examiner considered the available evidence of record before opining that it was less likely as not that the Veteran's HIV condition was incurred or caused by the Veteran's tour in Africa during military service. The examiner instead cited the high risk presented by intravenous drug use and stated that the Veteran's HIV-positive status was a result of chronic heroin abuse.

In a July 2015 clarifying medical opinion, a VA examiner opined it was more likely than not that the Veteran's HIV-positive status was due to intravenous drug abuse/dependence. In support of this opinion, the examiner reasoned in part that the preponderance of evidence in the Veteran's treatment records suggest chronic intravenous drug dependence, a significant risk factor for acquiring HIV. The examiner further reasoned that the type of illicit drug injected was irrelevant because the intravenous method was the most significant risk factor for acquiring HIV.

Thereafter, in a June 2017 remand, the Board sought a medical opinion from a VA examiner to address the Veteran's reports of unprotected sexual encounters while on R&R leave from deployment in East Africa.

In an August 2017 examination report, a VA examiner provided an opinion, wherein pursuant to the Board's request, he considered the Veteran's reports of unprotected sexual encounters during service. The VA examiner reiterated that STRs documented polysubstance abuse and intravenous drug abuse prior to and during deployment to East Africa and the Veteran had a history of multiple drug abuse for many years. While acknowledging the Veteran had multiple risk factors for HIV, including unprotected sex, the examiner stated that substance abuse represented the predominant risk factor in the Veteran's case. The VA examiner ultimately concluded that the Veteran's HIV was less likely as not related to unprotected sex during military service.

In November 2017, the Board sought additional medical expert opinion from a VHA infectious disease specialist to further address the significance of the Veteran's reports of unprotected sexual encounters; the Veteran's polysubstance abuse; and the Veteran's negative HIV tests in 2005 and 2006.

In December 2017, the VHA infectious disease specialist reviewed the medical record reviewed the medical record and answered "yes" to the question of whether it was at least as likely as not that the Veteran's HIV was sexually acquired during service rather than related to prior injection drug use. Given facts in the record indicating the Veteran's last pre-military use of intravenous drugs was in December 2004, the infectious disease specialist cited the Veteran's negative HIV test results in 2006 and supporting medical literature as ruling out the possibility that pre-military intravenous drug use was the cause of HIV infection.

The Board finds the December 2017 VHA opinion to be the most probative evidence of record. The opinion was offered by an infectious disease specialist and it included a review of the Veteran's medical records, up-to-date medical literature, and an expert rationale for determining the Veteran's HIV was at least as likely as not sexually acquired during service. Additionally, it is based on an accurate factual predicate concerning the timeline of the Veteran's drug use.

In light of the favorable December 2017 VHA opinion, the Board resolves any reasonable doubt in the Veteran's favor, see 38 U.S.C. § 5107(b), and entitlement to service connection for HIV is warranted. See Wise v. Shinseki, 26 Vet. App. 517, 531 (2014) ("By requiring only an 'approximate balance of positive and negative evidence' ..., the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding ... benefits.")


ORDER

Entitlement to service connection for HIV is granted.





____________________________________________
T. MAINELLI
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs