﻿Citation Nr: 18900017
Decision Date: 11/14/18 Archive Date: 11/14/18

DOCKET NO. 180620-34
DATE: November 14, 2018
ORDER
Entitlement to service connection for a lumbar spine disability, to include degenerative disc disease at L4-5 and L5-S1 with bilateral lower extremity radiculopathy, is granted.
Entitlement to a rating of 50 percent for migraine headaches is granted, effective September 25, 2017.
FINDINGS OF FACT
1. The evidence is in relative equipoise as to whether the Veteran has a lumbar spine disability, to include degenerative disc disease at L4-5 and L5-S1 with bilateral lower extremity radiculopathy, that was incurred in service. 
2. From September 25, 2017, the Veteran’s migraine headaches were manifested by very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.
CONCLUSIONS OF LAW
1. The criteria for service connection for a lumbar spine disability, to include degenerative disc disease at L4-5 and L5-S1 with bilateral lower extremity radiculopathy, have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.
2. The criteria for a 50 percent rating for migraine headaches have been satisfied, effective September 25, 2017. 38 U.S.C. §§ 1155, 5107, 5110; 38 C.F.R. § 3.102, 3.400, 4.3, 4.124a, Diagnostic Code 8100.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty in the United States Army from February 2011 to June 2016, including over three years of foreign service.
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO).
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in BEAAM, the Board’s Early Applicability of Appeals Modernization research program. This decision has been written consistent with the new AMA framework.
A brief recitation of the procedural history is necessary to clarify the issues currently before the Board and the actions taken herein. 
In this regard, as concerning the claim for a higher rating for the service-connected migraines, a December 2017 rating decision denied the Veteran’s November 14, 2017 claim for a rating in excess of 30 percent. Later that month, the Veteran requested reconsideration of that decision, which occurred in a January 2018 rating decision that confirmed and continued the 30 percent rating for the service-connected migraine headaches. Subsequently, in May 2018, so within a year of the January 2018 rating decision, the Veteran again requested an increased rating, and, in response, the RO sought an addendum opinion in June 2018. Based on that opinion, the RO again denied a rating in excess of 30 percent in a June 2018 rating decision. This appeal followed. 
Regarding the Veteran’s service connection claim, the record indicates that, on February 26, 2018, the Veteran notified VA of his intent to file a claim for compensation (via VA Form 21-0966). Within one year of notifying VA of his intent, the Veteran submitted a formal claim for, in pertinent part, “bilateral lower extremity radiculopathy[, as] secondary to[ service-connected] thoracic spine levo-scoliosis (claimed as scoliosis).” The RO denied the claim in a May 2018 rating decision. Later that month, the Veteran submitted a new claim, characterized as a request to reopen the previously denied claims for right and left lower extremity radiculopathy, along with additional relevant evidence in the form of May 2018 treatment records from his neurologist reflecting a diagnostic impression of “Lumbosacral Radiculitis; Peripheral Neuralgia.” In response, the RO readjudicated the claim in a June 2018 rating decision, confirming and continuing its previous May 2018 denial. The Veteran disagreed, and this appeal followed. Accordingly, the Veteran’s November 2017 claim forms the basis of the instant appeal.
Despite the Veteran’s characterization of his service connection claim, and as discussed in detail below, there is evidence relating the Veteran’s claimed lower extremity neurologic symptoms to a lumbar spine disability, specifically lumbar degenerative disc disease, and in turn relating this lumbosacral pathology to his active service. In this regard, the Board notes that a claimant may adequately identify the disability for which compensation benefits are sought by referring to a body part or system that is disabled, or by describing the symptoms of that disability. See Brokowski v. Shinseki, 23 Vet. App. 79 (2009). Thus, given the evidence of record, the Board has recharacterized the Veteran’s claim for a disability manifested by bilateral lower extremity radiculopathy to include his underlying lumbar spine pathology, as reflected above. Moreover, as the claim for service connection for a low back disability, including lumbar degenerative disc disease with bilateral lower extremity radiculopathy, is being granted, there is no prejudice in construing the claim in this manner. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).
1. Service Connection for a lumbar spine disability
The Veteran asserts entitlement to service connection for a disability manifested by bilateral lower extremity radiculopathy.
Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service, even if the disability was initially diagnosed after service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303.
Alternatively, under 38 C.F.R. § 3.303(b), service connection may be awarded for a “chronic” condition, such as radiculopathy, as an organic disease of the nervous system, when (1) a chronic disease manifests itself and is identified as such in service, or within the presumptive period under 38 C.F.R. § 3.307, and the Veteran presently has the same condition; or (2) a disease manifests itself during service, or during the presumptive period, but is not identified until later, and there is a showing of continuity of related symptomatology after discharge, and medical evidence relates that symptomatology to the Veteran’s present condition. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258, 263-64 (2015).
Additionally, service connection for certain diseases, including organic diseases of the nervous system, may be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 C.F.R. §§ 3.307(a)(3), 3.309(a).
VA law also permits an award of service connection on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists; and (2) that the current disability was either: (a) proximately caused by; or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).
Here, while still on active duty in February 2016, the Veteran underwent a VA health assessment in preparation for his separation. See February 2016 VA General Medical Separation Health Assessment Disability Benefits Questionnaire (DBQ). The examining clinician noted the Veteran’s reports “describing pain to the lower lumbar region.” On thoracolumbar spine evaluation, the objective clinical findings included a notation of “tenderness with compression along L1/L2/L3 spinous process and well as with compression along bilateral lumbar flanks with muscle tension and tightness.” The examining clinician noted the presence of asymptomatic thoracic scoliosis, clarifying that this “[s]light curvature of upper thoracic spine” produced “no pain . . . to the upper or mid thoracic region with compression or spine manipulation.” Instead, “pain [was] evident to [the] lumbar region only.” No imaging studies were taken at that time and no additional thoracolumbar conditions were diagnosed.
Following his discharge, the Veteran was granted service connection for, among other things, the diagnosed thoracic scoliosis. See July 2016 Rating Decision (granting service connection for “thoracic spine levo-scoliosis” and assigning a 10 percent rating from June 27, 2016, the day following his separation from active duty, based upon the “[l]ocalized tenderness” and “[m]uscle spasm” noted on the February 2016 VA General Medical Separation Health Assessment DBQ). 
April 2017 treatment reports from a private pain management clinic note the Veteran’s complaints of “constant stabbing and burning type [low back] pain with aching radiation down the posterior of both legs to the level of the ankles,” which “began in 2012 and was associated with military training and a motor vehicle accident.” See April 2012 Physician Pain Care Associates Treatment Records. Although the private treating physician noted the presence of thoracic levo-scoliosis, the Veteran’s low back symptomatology was attributed to “[l]umbar spondylosis” and “[f]acet syndrome,” and the Veteran was treated with a “Lumbar Medial branch block, L3/4, L4/5 and L5/S1 left.” Id. 
On VA examination in May 2017, the Veteran reported “constant pain in low back radiating to ankles, aggravated by prolonged sitting/standing, and intermittent ‘numbness’ sensation in both buttock areas.” See May 2017 VA Back Conditions DBQ. Although the examining VA clinician noted the private records identifying lumbar spondylosis and facet syndrome, and the medial branch block used to treat those identified conditions, the only thoracolumbar spine diagnosis provided was thoracic spine levo-scoliosis. Despite this, the examiner noted the presence of intervertebral disc syndrome (IVDS) of the thoracolumbar spine, but did not provide any additional information concerning this finding. 
As alluded to above, in March 2018, the Veteran filed a formal claim for “bilateral lower extremity radiculopathy[, as] secondary to[ service-connected] thoracic spine levo-scoliosis (claimed as scoliosis).” Along with this claim, he submitted a lumbar spine MRI report from a private treatment facility identifying “[m]ild degenerative disc disease at L4-5 and L5-S1.” See March 2018 Little River Healthcare Radiology Report.
On VA back examination in April 2018, the Veteran again reported persistent low back symptomatology. The examining clinician noted that the Veteran continued to receive treatment from a private pain management clinic, including “injections.” See April 2018 VA Back Conditions DBQ. The clinician acknowledged the MRI findings of lumbar spine degenerative disc disease; however, as with the previous April 2017 VA examination, the only diagnosis provided was thoracic spine levo-scoliosis. Id. Additionally, the VA examiner specifically determined that there was “no objective evidence of radiculopathy of . . . the . . . lower extremities” despite the Veteran’s complaints of radiating pain and numbness in his buttocks and legs.
The following month, the Veteran’s private neurologist, Dr. S.K., performed an electromyography (EMG) test and nerve conduction study (NCS) in response to the Veteran’s complaints of progressively worsening “numbness, tingling and pain from low back, down legs and into feet . . . ongoing for the past 2 years.” See May 2018 Treatment Records from S.K., M.D. The testing revealed the presence of “mild chronic bilateral L5 lumbar radiculopathy” and resulted in an assessment of “[l]umbosacral radiculitis” and “[p]eripheral neuralgia.” 
These findings are echoed in the treatment notes from the Veteran’s neurosurgeon, Dr. S.C.Z. See July 2018 Spine and Neurosurgery Treatment Notes from S.C.Z., M.D. Specifically, Dr. S.C.Z. diagnosed intervertebral disc displacement and intervertebral disc degeneration of the lumbosacral spine, productive of lumbar radiculopathy, and fit the Veteran for a lumbar support brace to be used for 4-6 hours per day to alleviate his lumbar spine symptoms. Id. 
Accordingly, based on the foregoing, the Board finds that the weight of the medical evidence establishes that the Veteran has a current low back disability, separate and apart from the service-connected thoracic levo-scoliosis, variously diagnosed during the pendency of the claim as degenerative disc disease at L4-5 and L5-S1, and intervertebral disc displacement and intervertebral disc degeneration of the lumbosacral spine, with associated neurologic manifestations affecting the bilateral lower extremities, diagnosed as lumbosacral radiculitis / lumbar radiculopathy. See McLain v. Nicholson, 21 Vet. App. 319, 321 (2007) (holding that the current disability requirement is satisfied when a disability is shown at any point during the course of a claim).
Furthermore, the Veteran’s medical records document his consistent complaints during and since his active duty, concerning his low back manifestations and bilateral lower extremity radicular symptomatology during his active service. These credible complaints, coupled with the medical records reflecting diagnoses of a lumbar pathology, including lumbar degenerative disc disease, and lower extremity neurologic manifestations, including bilateral lower extremity radiculopathy, within 2 years of his discharge, place the evidence at least in a state of relative equipoise as to whether the Veteran’s currently diagnosed conditions initially manifested during his active service. 38 U.S.C. §§ 1110, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). 
Accordingly, in the absence of any evidence to the contrary, the Board finds that service connection for a lumbar spine disability, to include degenerative disc disease at L4-5 and L5-S1, with bilateral lower extremity radiculopathy is warranted. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).
2. Increased Rating in excess of 30 percent for migraines from November 14, 2017 to June 8, 2018
The Board finds that the criteria for a 50 percent rating for the Veteran’s migraine headaches are satisfied. 
VA has adopted a Schedule for Rating Disabilities to evaluate service-connected disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 3.321; see generally, 38 C.F.R. § Part IV. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10. The percentage ratings in the Schedule for Rating Disabilities represent, as far as practicably can be determined, the average impairment in earning capacity resulting from service-connected disabilities in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. 
Diagnostic codes in the rating schedule identify the various disabilities and the criteria for specific ratings. All reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3; see also 38 C.F.R. § 3.102. 
Because the level of disability may have varied over the course of the claim, the rating may be “staged” higher or lower for segments of time during the period under review in accordance with such variations. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999). In increased-rating claims, where a claimant seeks a higher evaluation for a previously service-connected disability, VA considers the level of disability for the period beginning one year prior to the claim for a higher rating. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2) (reflecting that the effective date of an increase in disability compensation shall be the earliest date as of which it was factually ascertainable that an increase in disability had occurred if a claim was received within one year from such date; otherwise, the effective date shall be the date of receipt of claim); Hazan v. Gober, 10 Vet. App. 511, 519 (1992).
A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence on any issue material to the claim. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.
In the instant case, the Veteran’s headaches have been assigned a 30 percent rating under Diagnostic Code (DC) 8100, which pertains to migraines. See 38 C.F.R. § 4.124a. Under DC 8100, as pertinent to the present claim, a 30 percent rating is assigned for migraines with characteristic prostrating attacks occurring on an average of once a month over the last several months. Id. A 50 percent rating is assigned for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Id. 
The regulation does not define “economic inadaptability.” Nevertheless, the U.S. Court of Appeals for Veterans Claims (Court) has held that under DC 8100, a headache disorder need only be “capable of producing” economic inadaptability, and that this standard is different from the “unemployability” standard applicable in the context of determining entitlement to a total disability rating based on individual unemployability (TDIU). Pierce v. Principi, 18 Vet. App. 440, 445-46 (2004); see 38 C.F.R. §§ 3.340, 4.16 (2016) (setting forth the requirements for establishing entitlement to TDIU). 
The Rating Schedule also does not define “prostrating.” However, in a recent precedential panel decision, the Court noted that “‘[p]rostrating’ means ‘lacking in vitality or will: powerless to rise: laid low.’” Johnson v. Wilkie, No. 16-3808, slip op. at 9 (U.S. Vet. App. Sep. 19, 2018) (precedential panel decision) (quoting WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1822 (1966)). The Court further determined that “the phrase ‘characteristic prostrating attacks’ plainly describes migraine attacks that typically produce powerlessness or a lack of vitality.” Id. Significantly, as pertinent to the present appeal, the Court further elucidated the distinction between the 30 percent and 50 percent rating criteria, stating:
[T]he difference between the 50% disability rating and the lower disability ratings is that “completely” modifies “prostrating headaches” in the 50% rating while “characteristic” modifies “prostrating headaches” in the lower ratings. “Completely” is defined as “to complete degree: entirely.” WEBSTER’S at 465. This change signals that the nature of the headaches for the 50% criteria is more severe than that for the lower ratings. The salient feature of the 50% rating is that the headache attacks must be “completely prostrating.” In other words, the headaches must render the veteran entirely powerless. . . . To satisfy the 50% rating criteria, the headache attacks must [also] occur “very” frequently[,] . . . [which] connotes a frequency greater than once a month, which is enumerated in the 30% rating level . . . . Additionally, because the 50% rating requires “very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability,” the use of the conjunctive “and” makes clear that the headaches must be long in duration. (emphasis added). “Prolong” is defined as “to lengthen in time: extend duration: draw out: continue, protract.” WEBSTER’S at 1815. Finally, the 50% rating criteria requires the headaches to produce or be capable of producing “severe economic inadaptability.” 
See id. at 9-10 (internal case citations omitted). 
The Johnson Court additionally found that, because “each disability level builds on another in terms of duration and frequency, [DC 8100] require[es] . . . a veteran rated at a higher level to satisfy all the requirements of the lower levels.” As such, because the rating criteria under DC 8100 are successive, that Diagnostic Code is among those for which the provisions of 38 C.F.R. § 4.21 (“it is not expected... that all cases will show all the findings specified [in the applicable DC]”) and 38 C.F.R. § 4.7 “the higher evaluation will be assigned if the disability picture [of the claimant] more nearly approximates the criteria required for that rating”) do not apply. Johnson, No. 16-3808, slip op. at 1 – 2. 
Turning to the evidence of record, a September 2017 VA Headaches Disability Benefits Questionnaire (DBQ) filled out by a private neurologist, Dr. S.K., reflects that the Veteran experiences “very frequent prostrating and prolonged attacks of migraine headache pain,” with a usual duration of 1 to 2 days, occurring more frequently than once per month, during which the Veteran “becomes dysfunctional and not able to work.” Symptoms associated with his headaches include constant bitemporal pain, pulsing and throbbing head pain, nausea, vomiting, sensitivity to light and sound, visual distortion, and worsening with physical activity. 
The November 2017 VA Headaches DBQ reflects that the Veteran reported experiencing headaches four times per week with throbbing and pulsating bitemporal pain, lightheadedness, dizziness, blurred vision with rainbow spots, sensitivity to light and sound, nausea, and vomiting. The usual duration 6 to 8 hours, but with severe attacks of headache symptoms lasting 1 to 2 days. The Veteran additionally reported that “on average he has had to use sick leave 3 to 5 days per month due to severe migraines” during which his is unable to drive, concentrate, tolerate light, or look at screens or monitors. He has been sent home from work due to migraine symptoms, has missed trainings, and occasionally must has to lay down due to lightheadedness and dizziness. The examiner indicated that characteristic prostrating attacks of headache pain occurred once every month. 
In June 2018, a VA examiner completed a Headaches DBQ based on a review of the claims file. The report restates the findings of the November 2017 VA examiner as to symptomatology and manifestations of the Veteran’s migraine headaches. As to functional impairment, the examiner noted that the Veteran’s attacks of headache symptoms “impair him at work with frequent absenteeism.” 
In support of his claim, the Veteran submitted a migraine journal documenting more than 50 migraine attacks during the period from January 2018 to May 2018, ranging in duration from 1 hour to 19 hours, and often requiring that he cease all activity and lay down in a dark room until the symptoms subsided. See May 2018 Representative Correspondence. The Veteran also submitted leave request forms from his employer indicating that he has used approximately 24 days of leave since March 2018 due to “migraines.” See September 2018 Representative Correspondence. 
In light of the foregoing, and resolving reasonable doubt in favor of the claim, the Board finds, based on the examination findings in the September 2017 DBQ authored by Dr. S.K., the November 2017 and June 2018 VA examination reports, and the migraine log and employment records submitted by the Veteran, that the Veteran’s headache disorder has been manifested by very frequent completely prostrating and prolonged attacks of migraine headache symptoms productive of severe economic inadaptability. See 38 C.F.R. §§ 4.3, 4.124a, DC 8100; see also 38 C.F.R. § 3.102. See, too, Johnson, No. 16-3808, slip op. at 9 – 10 (reflecting that, to warrant a 50 percent rating, the headache attacks must “render the veteran entirely powerless”; must occur at “a frequency greater than once a month”; “must be long in duration”; and must “produce or be capable of producing ‘severe economic inadaptability’”). 
In this regard, the Board finds the Veteran’s competent lay assertions as to the functional effect of his migraine headache attacks to be credible, as his statements are bolstered by the report of his treating neurologist and corroborated by his employment records. Viewed in the light most favorable to the Veteran, the medical and lay evidence of record establishes that he experiences symptoms that render him completely powerless. See, e.g., September 2017 Headaches DBQ from Dr. S.K. (noting that the Veteran “becomes dysfunctional” during headache attacks). Moreover, the Veteran experiences attacks of headache pain that are long in duration, lasting from 6 hours at a minimum to a maximum of 2 days, and that occur more frequently than once per month. See September 2017 Headaches DBQ from Dr. S.K.; November 2017 VA Headaches DBQ. Finally, the Veteran’s migraine headache attacks are at least “capable of producing ‘severe economic inadaptability,’” as the examining medical providers agree that such attacks result in increased absenteeism and an inability to work during headaches, and because the employment records confirm that, since at least April 2018, the Veteran has averaged nearly 1 day of leave per week due to his migraine headaches. See September 2017 Headaches DBQ from Dr. S.K.; November 2017 VA Headaches DBQ; June 2018 VA Headaches DBQ; September 2018 Representative Correspondence.
A rating of 50 percent is therefore warranted for the Veteran’s service-connected migraine headaches under DC 8100, which is the maximum schedular rating available under that diagnostic code. 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3. Further, this rating is effective September 25, 2017, the date of the DBQ completed by the Veteran’s private treating physician, discussed above, which is the earliest date as of which it was factually ascertainable that the increase in disability had occurred. See 38 U.S.C. § 5110; 38 C.F.R. § 3.400; and Harper v. Brown, 10 Vet. App. 125 (1997) (reflecting that the effective date of an award of compensation based on a claim for an increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later, unless evidence demonstrates that a factually ascertainable increase in disability occurred within the one-year period preceding the date of receipt of a claim for increased compensation).

 
Evan M. Deichert
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD L. McCabe, Counsel