﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190421-8104
DATE: October 31, 2019

ORDER

Entitlement to service connection for lumbar degenerative disc disease (hereinafter, a low back disability) is denied.

Entitlement to service connection for radiculopathy, sciatic nerve, of the right lower extremity, to include as secondary to a low back disability, is denied.

Entitlement to service connection for radiculopathy, sciatic nerve, of the left lower extremity, to include as secondary to a low back disability, is denied.

Entitlement to service connection for degenerative arthritis of the right hip is denied.

Entitlement to service connection for degenerative arthritis of the left hip is denied.

Entitlement to service connection for degenerative arthritis of the cervical spine is denied.

Entitlement to service connection for radiculopathy of the right upper extremity, to include as secondary to degenerative arthritis of the cervical spine and/or service-connected right shoulder impingement, is denied.

Entitlement to service connection for radiculopathy of the left upper extremity, to include as secondary to degenerative arthritis of the cervical spine, is denied.

Entitlement to service connection for right knee strain is denied.

Entitlement to service connection for a lateral collateral ligament sprain of the right ankle is denied.

Entitlement to service connection for a lateral collateral ligament sprain of the left ankle is denied.

Entitlement to a disability evaluation in excess of 10 percent for status post meniscectomy left knee, to include traumatic arthritis and scar, is denied.

Entitlement to a separate 10 percent disability evaluation for left knee meniscus repairs is granted.

FINDINGS OF FACT

1. The Veteran’s low back disability is not etiologically related to his service.

2. The Veteran’s radiculopathy, sciatic nerve, of the right lower extremity is neither etiologically related to his service, nor aggravated by or proximately due to a service-connected disability.

3. The Veteran’s radiculopathy, sciatic nerve, of the left lower extremity, to include as secondary to a low back disability, is neither etiologically related to his service, nor aggravated by or proximately due to a service-connected disability.

4. The Veteran’s degenerative arthritis of the right hip is not etiologically related to his service.

5. The Veteran’s degenerative arthritis of the left hip is not etiologically related to his service. 

6. The Veteran’s degenerative arthritis of the cervical spine is not etiologically related to his service.

7. The Veteran does not have a current diagnosis of radiculopathy of the right upper extremity.

8. The Veteran does not have a current diagnosis of radiculopathy of the left upper extremity.

9. The Veteran’s right knee strain is not etiologically related to his service.

10. The Veteran’s lateral collateral ligament sprain of the right ankle is not etiologically related to his service.

11. The Veteran’s lateral collateral ligament sprain of the left ankle is not etiologically related to his service.

12. The Veteran’s left knee disability is manifested by degenerative changes of the joint shown on x-ray and painful motion, but at no point during the appeal has the Veteran’s left knee been ankylosed; nor has there been objective evidence of flexion limited to less than 60 degrees or extension limited to more than 5 degrees.

13. The Veteran’s left knee disability is manifested by symptomatic removal of semilunar cartilage. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a low back disability have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304.

2. The criteria for entitlement to service connection for radiculopathy, sciatic nerve, of the right lower extremity, to include as secondary to a low back disability, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304, 3.310.

3. The criteria for entitlement to service connection for radiculopathy, sciatic nerve, of the left lower extremity, to include as secondary to a low back disability, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304, 3.310.

4. The criteria for entitlement to service connection for a degenerative arthritis of the right hip have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304.

5. The criteria for entitlement to service connection for degenerative arthritis of the left hip have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304.

6. The criteria for entitlement to service connection for degenerative arthritis of the cervical spine have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304.

7. The criteria for entitlement to service connection for radiculopathy of the right upper extremity, to include as secondary to degenerative arthritis of the cervical spine and/or service-connected right shoulder impingement, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304, 3.310.

8. The criteria for entitlement to service connection for radiculopathy of the left upper extremity, to include as secondary to degenerative arthritis of the cervical spine, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304, 3.310.

9. The criteria for entitlement to service connection for right knee strain have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304.

10. The criteria for entitlement to service connection for a lateral collateral ligament sprain of the right ankle have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304.

11. The criteria for entitlement to service connection for a lateral collateral ligament sprain of the left ankle have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § §§ 3.102, 3.303, 3.304.

12. The criteria for entitlement to a disability evaluation in excess of 10 percent for status post meniscectomy left knee to include traumatic arthritis and scar have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § §§ 4.1, 4.2, 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5010, 5260, 5261.

13. The criteria for a separate disability rating of 10 percent, but no higher, for left knee meniscus repairs have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § §§ 3.159, 4.1-414, 4.71a, Diagnostic Code 5259.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from February 1976 to August 1996.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with the Department of Veterans Affairs’ (VA’s) decision on their claim to seek review. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a March 2019 rating decision by a VA Regional Office (RO). In April 2019, the Veteran timely appealed the rating decision to the Board and requested the appeal be considered based on the evidence of record when the March 2019 rating decision was issued. 38 C.F.R. § § 20.301

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § § 3.303. A veteran seeking compensation under these provisions must establish three elements: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

A disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § § 3.310(a). Secondary service connection may also be established for a nonservice-connected disability which is aggravated by a service-connected disability. In such an instance, the Veteran may be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. 38 C.F.R. § § 3.310(b); Allen v. Brown, 7 Vet. App. 439, 448 (1995).

Presumptive service connection may be granted for “chronic diseases” if the disease manifests to a compensable degree within service or within the presumptive period of one year after separation. 38 C.F.R. § § § 3.307(a)(3). Arthritis is categorized as a chronic disease. 38 U.S.C. § 1101; 38 C.F.R. § § 3.309(a). For the showing of “chronic” disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 

Service connection may also be established under 38 C.F.R. § § 3.303(b) where a condition in service is noted but is not, in fact, chronic, or where a diagnosis of chronicity may legitimately be questioned. The continuity of symptomatology provision of 38 C.F.R. § § 3.303(b) has been interpreted as an alternative to service connection for the specific chronic diseases listed in 38 C.F.R. § § 3.309(a). See Walker v. Shinseki, 718 F.3d 1331 (Fed. Cir. 2013). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. 38 C.F.R. § § 3.159(a)(1). Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § § 3.159(a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of the positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. 

Here, the Veteran asserts that he is entitled to service connection for several conditions, enumerated and discussed below. The Veteran claims that his disabilities resulted from his work as a paratrooper in the Army. The Veteran’s Form DD-214 and service treatment records confirm that he worked as a parachutist. See, e.g., Form DD-214 (documenting his receipt of the parachutist badge); April 1978 Service Treatment Records (indicating that the Veteran was temporarily restricted from doing parachute jumps due to a hernia operation). 

1. Entitlement to service connection for a low back disability

With respect to the first element of the test for service connection, a current diagnosis, the Veteran was diagnosed with degenerative arthritis of the spine during an August 2018 VA examination. The Board notes that in the March 2019 RAMP rating decision, the RO found that evidence of the Veteran’s condition existed in his VA treatment records. As such, the Board is bound by this favorable finding. In this regard, the Veteran’s post-service VA treatment records include a May 2015 x-ray, which showed multilevel degenerative changes of the lumbar spine with prominent dextrocurvature. The Veteran also complained of low back pain as early as January 2012, when he complained that his low back was in pain. 

At the outset, the Board finds that presumptive service connection, under 38 C.F.R. § 3.303(b) is not warranted, as there is no x-ray evidence or documentation showing arthritis of the lumbar spine during service or within one year of the Veteran’s discharge. In addition, arthritis was not noted during service nor were characteristic manifestations of the disease processes identified in service. 

The Board also finds that direct service connection is not warranted. With respect to the second element of the test, in-service incurrence, the Veteran’s service treatment records do not reflect any complaints, symptoms, or treatment for a low back disability. For instance, on his discharge examination in April 1996, no abnormalities were noted with respect to the Veteran’s spine, and he did not endorse any complaints of recurrent back pain in the May 1996 report of medical history. Although the Board acknowledges that the Veteran’s duties in service included work as a parachutist, the record is absent of any injuries or other complaints related to parachute jumps, and the Veteran has not described any specific back injuries that he incurred due to parachute jumps. Considering the fact that the Veteran’s service treatment records contain complaints and treatments for numerous other injuries and diseases (for instance, a left knee injury, a right shoulder injury, and an inguinal hernia), the absence of any reports of a low back injury in service treatment records is highly probative. See AZ v. Shinseki, 731 F.3d 1303 (Fed. Cir. 2013) (recognizing the widely held view that the absence of an entry in a record may be considered evidence that the fact did not occur if it appears that the fact would have been recorded if present).

Moreover, the medical evidence of record does not link a current low back disability to his military service. The August 2018 VA examiner opined that the Veteran’s low back disability was less likely as not incurred in or caused by his service. In so concluding, the VA examiner noted that there was no evidence in the Veteran’s service treatment records describing any back conditions, or complaints or treatments for back injuries relating to parachuting. Furthermore, the VA examiner concluded, the Veteran did not complain of a back disability during his discharge examination and did not receive medical care for his lumbar condition until 2015, approximately 20 years after separation from service. Such a lapse of time is a factor for consideration in deciding a service connection claim, particularly because the Veteran began receiving post-service treatment for various other health conditions shortly after he was discharged from service. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). 

The Board finds the VA examiner’s opinion to be supported by the medical evidence of record and thus highly probative on the issue of nexus. Indeed, the Veteran’s post-service VA treatment records suggest that his low back disability was the result of his poor posture, as opposed to his work as a parachutist. For instance, a September 2015 outpatient note noted that the Veteran demonstrated a lateral lean to the right side caused by a scoliotic curve to his right side. Additionally, a July 2015 physical therapy note indicated that the Veteran presented with mechanical low back pain that was “probably caused by scoliotic posture.” 

Ultimately, the Board finds that the preponderance of the evidence weighs against finding that the Veteran’s low back disability was incurred in or related to his military service. 

2. Entitlement to service connection for radiculopathy, sciatic nerve, of the right lower extremity, to include as secondary to a low back disability

3. Entitlement to service connection for radiculopathy, sciatic nerve, of the left lower extremity, to include as secondary to a low back disability

The Veteran argues that he is entitled to service connection for bilateral sciatica, including as secondary to his low back disability. 

With respect to the Veteran’s complaints of bilateral sciatica, the Veteran was diagnosed with mild, incomplete paralysis of his left and right sciatic nerves during his August 2018 VA examination. Moreover, the Board notes that the RO found in its March 2019 rating decision that the Veteran’s VA treatment records contained complaints of bilateral sciatica. More specifically, the Veteran’s VA treatment records reflect that in May 2015 he began complaining of radiating pain in his legs. These complaints coincided with the Veteran’s complaints of low back pain. The Board is bound by this favorable finding. Nonetheless, the Board has determined that the Veteran’s low back disability is not service-connected. As such, secondary service connection is not available. 

Likewise, the Board finds that service connection on a direct basis is not warranted either. In this respect, the August 2018 VA examiner offered a negative nexus opinion as to the issue of direct service connection. Although the Veteran has a current diagnosis of mild, incomplete paralysis of his left and right sciatic nerves, the VA examiner explained that his service treatment records are totally silent for any complaints, symptoms, or treatment of radiculopathy of the lower extremities, such as tingling or numbness. 

This conclusion is supported by the medical evidence of record. For instance, the Veteran’s April 1996 separation examination indicates that no abnormalities of the nerves or musculoskeletal system were noted prior to discharge. The only abnormalities with respect to the lower extremities that were reported on the separation examination concerned crepitus of the left knee, which was in connection with a left knee injury the Veteran sustained during service. The absence of any complaints of radiating pain in the lower extremities is thus highly probative. AZ, 731 F.3d at 1303. Moreover, the Veteran’s post-service VA treatment records do not contain any complaints of radiating pain in his bilateral lower extremities until 2015, nearly 20 years after he separated from service. See Maxson, 230 F.3d at 1333. 

As such, the Board finds that the preponderance of the evidence is against entitlement to service connection for radiculopathy, sciatic nerve, of the bilateral lower extremities on either a direct or secondary basis. 

4. Entitlement to service connection for degenerative arthritis of the left hip 

5. Entitlement to service connection for degenerative arthritis of the right hip 

Similarly, the Board finds that the preponderance of the evidence is against the Veteran’s claims for entitlement to service connection for degenerative arthritis in his right and left hips. At his August 2018 VA examination, the Veteran was diagnosed with degenerative arthritis in both hips. Additionally, the March 2019 rating decision indicates that the Veteran’s hip condition was noted in his VA treatment records. The Board is bound by this favorable finding. 

However, the Board finds that the evidence fails to show any complaints, symptoms, or treatment for an injury to either hip during his service, or for arthritis in either hip. And, as already explained, the Veteran’s April 1996 separation examination does not note any abnormalities with either of the Veteran’s lower extremities other than the Veteran’s left knee injury. 

The Board finds that presumptive service connection for the Veteran’s bilateral hip arthritis is not warranted as there is no documentation of arthritis in either hip from within one year of the Veteran’s discharge. Provisions of law permitting presumptive service connection based on continuity of symptomatology are not for application as arthritis was not noted during his service and characteristic manifestations of the disease processes were not identified. Accordingly, § 3.303(b) is not applicable. See also Walker, 708 F.3d at 1331. 

Direct service connection is also not warranted. With respect to the question of whether a nexus exists between the arthritis in the Veteran’s hips and his service, the August 2018 VA examiner opined that it was less likely as not that the Veteran’s degenerative arthritis in his hips was incurred in or related to his service. To support this conclusion, the VA examiner cited to the lack of any complaints related to the Veteran’s hips in his service treatment records or on his separation examination. 

Furthermore, the Board finds that the VA examiner’s opinion is supported by the medical evidence of record. While the Board acknowledges that the Veteran’s post-service treatment records contain complaints of pain in his legs, these complaints are characterized as complaints of radiculopathy in the lower extremities rather than complaints of arthritis in the hips. Moreover, as discussed above, no complaints were voiced to treating clinicians until nearly 20 years after discharge from service. See Maxson, 230 F.3d at 1333. 

As such, the Board finds the VA examiner’s explanation probative and persuasive with respect to the nature and etiology of the Veteran’s bilateral hip condition. The greater weight of the evidence is thus against a finding of service connection. 

6. Entitlement to service connection for degenerative arthritis of the cervical spine

The Veteran also argues that he is entitled to service connection for degenerative arthritis of the cervical spine (i.e., the neck). 

With respect to the first element of service connection, the Veteran was diagnosed with degenerative joint disease and degenerative disc disease of the cervical spine at his August 2018 VA examination. As with many of the Veteran’s other claims for service connection, the RO found in its March 2019 rating decision that the Veteran’s VA treatment records reflected treatment for his neck disability. For instance, the Veteran was diagnosed with multilevel cervical degenerative disc disease in May 2015 after having an x-ray taken. The Board is bound by this favorable finding. 

However, the Veteran’s service treatment records do not document any complaints, symptoms, or treatment for neck pain or arthritis. For instance, at a January 1995 doctor’s appointment in connection with right shoulder and left knee injuries, the Veteran indicated that his neck was not bothering him. Later that month, the Veteran’s medical records note no range of motion limitations with respect to his neck. At a September 1995 outpatient doctor’s appointment prior to a left knee surgery, the Veteran again denied stiffness in his neck. Additionally, the Veteran denied any neck problems in his May 1996 report of medical history in connection with his separation examination. Ultimately, the medical evidence of record fails to demonstrate that the Veteran had any neck injuries or symptoms related to his neck during his service. For this reason, presumptive service connection for the Veteran’s arthritis of the cervical spine is not warranted under § 3.303(a), and § 3.303(b) is not applicable. 

Furthermore, the evidence fails to establish direct service connection because there is no causal nexus between the Veteran’s current neck condition and his military service. At the Veteran’s August 2018 VA examination, the Veteran reported that he was told that his neck issues were likely caused by carrying his parachute on his back. However, the Veteran’s post-service treatment records do not contain any remarks or opinions linking his current neck condition to his work as a parachutist. The Board does not doubt the sincerity of the Veteran’s belief as to the etiology of his neck condition. However, the question of the etiology of the Veteran’s current disability is a medically complex question, and neither the Veteran nor the evidence of record have established that he has the medical expertise necessary to offer a competent opinion on this issue. 

Moreover, the VA examiner ultimately opined that it was less likely as not that the Veteran’s neck condition was incurred in or related to his military service. To support this conclusion, the VA examiner cited the Veteran’s service treatment records and post-service treatment records. The Board finds that the medical evidence of record supports the VA examiner’s opinion. Indeed, the Veteran’s post-service treatment records are absent for, and Veteran did not complain of, any signs of neck pain until 2015, nearly 20 years after separating from service. See Maxson, 230 F.3d at 1333. 

For these reasons, the Board finds that the preponderance of the evidence weighs against finding that the Veteran’s neck disability was incurred in or related to his military service. 

7. Entitlement to service connection for radiculopathy of the left upper extremity, to include as secondary to degenerative arthritis of the cervical spine

8. Entitlement to service connection for radiculopathy of the right upper extremity, to include as secondary to degenerative arthritis of the cervical spine or right shoulder impingement

The Veteran argues that he is entitled to service connection for radiculopathy of the left upper extremity, to include as secondary to his neck condition, as well as for radiculopathy of the right upper extremity, to include as secondary to his neck condition or his service-connected right shoulder impingement. 

At the outset, the Board notes that the RO found in its March 2019 rating decision that the Veteran’s VA treatment records contained complaints related to his claim for radiculopathy of the left upper extremity. The Board is bound by this favorable finding. 

However, the VA examiner at the Veteran’s August 2018 VA examination could not confirm a diagnosis of radiculopathy in either upper extremity. The VA examiner noted that the Veteran had no symptoms (i.e., pain, paresthesias and/or dysesthesias, or numbness) attributable to the peripheral nerves in his left upper extremity, and only mild intermittent pain, mild paresthesias, and mild numbness in the right upper extremity. The VA examiner also noted that the Veteran’s radial, median, ulnar, musculocutaneous, circumflex, and long thoracic nerves, as well as his upper, middle, and lower radicular groups, were all normal bilaterally. Additionally, the VA examiner noted that the Veteran’s claimed nerve condition had no functional impact. 

The VA examiner also clarified that although the Veteran had complained of pain in his right arm radiating from his right shoulder down his arm, this pain was more likely a result of his service-connected right shoulder impingement and not a result of radiculopathy, because the Veteran had not actually reported pain that radiated from the neck that traveled down to the arm. Moreover, while the Veteran had reported a vague history of numbness and tingling in his right arm, he did not relate these symptoms back to his neck pain. Citing medical literature, the VA examiner also explained that while shoulder impingement can cause weakness, it does not typically cause numbness and tingling. As such, the Board finds this medical evidence highly probative on the issue of whether the Veteran has a current disability of bilateral radiculopathy of the upper extremities. 

The existence of a current disability is the cornerstone of a claim for VA disability compensation. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). There is no evidence of record indicating that the Veteran has been diagnosed with radiculopathy in either upper extremity at any point during the pendency of his appeal. Without such a diagnosis, there can be no claim to service connection. As such, the claims must be denied.

9. Entitlement to service connection for right knee strain

The Veteran also asserts that he is entitled to service connection for right knee strain. 

The Veteran has established the first element of service connection. At his August 2018 VA examination, the VA examiner diagnosed the Veteran with right knee strain. Additionally, in its March 2019 rating decision, the RO found that the Veteran had made complaints related to his right knee in his VA treatment records. The Board is bound by this favorable finding.

However, regarding the second element of service connection, the Veteran’s service treatment records are devoid of any symptoms, complaints, or treatment for any right knee injuries or conditions. For instance, although the Veteran’s service treatment records are replete with complaints related to his injured left knee, complaints relating to the right knee are notably absent. The Board acknowledges that in the May 1996 report of medical history for his separation examination, the Veteran endorsed a “trick” or locked knee. However, based on his other service treatment records, this endorsement appears to be a reference to his left knee, the only knee which the Veteran injured and sought treatment for during his service. Moreover, the Veteran’s April 1996 report of medical examination indicates no abnormalities in his right knee. The only knee abnormalities reported by the examining physician are specifically in the left knee. 

Additionally, the VA examiner opined that the Veteran’s right knee strain was less likely as not incurred in or related to his service in the Army. As the VA examiner explained, the Veteran’s service treatment records did not note any symptoms or treatment for a right knee condition, and the Veteran did not receive any treatment for his right knee pain until several years after separating from service. While the Veteran’s post-service VA treatment records indicate that in June 2008 he complained of dull, constant right knee pain that he had experienced for 30 years, this is the earliest complaint related to right knee pain in the Veteran’s service and post-service medical records. Such a lapse in time between service and seeking treatment for his right knee condition is highly probative, particularly given the Veteran’s extensive post-service treatment history for other conditions. See Maxson, 230 F.3d at 1333. As such, the Board finds that the preponderance of the evidence weighs against a finding of service connection. 

10. Entitlement to service connection for a lateral collateral ligament sprain of the right ankle

11. Entitlement to service connection for a lateral collateral ligament sprain of the left ankle

The Veteran contends that he is entitled to service connection for a bilateral ankle disability. 

With respect to the first element of service connection, the August 2018 VA examiner diagnosed the Veteran with bilateral lateral collateral ligament sprains. As such, a current diagnosis is not at issue.

The Veteran’s service treatment records also indicate that the second element of the service connection test has been satisfied with respect to the Veteran’s right ankle. The Veteran’s service treatment records indicate that the Veteran sprained his right ankle in June 1983 and once again in December 1985. A right ankle x-ray performed in December 1985 shows no fracture or dislocation. Subsequently, the Veteran was put on crutches for one week with restricted duty. Indeed, in the March 2019 rating decision, the RO noted that the Veteran’s service treatment records reflected an in-service right ankle injury. As such, the Board is bound by this favorable finding. 

With respect to the left ankle, however, the Veteran’s service treatment records are absent for any injuries or complaints related to his left ankle. 

Even if the evidence were to reflect in-service ankle injuries for both ankles, however, the Board nonetheless finds that the record fails to establish a causal nexus between the current disability in either ankle and the Veteran’s military service. For instance, the August 2018 VA examiner opined that the Veteran’s right ankle sprain was acute, and that it was less likely as not that the disability in either of the Veteran’s ankles was linked to his service. The VA examiner cited the Veteran’s April 1996 separation examination, which reported no abnormalities with either ankle. The VA examiner also noted that the Veteran did not have a diagnosis of bilateral ankle arthritis. Furthermore, the examiner explained, there was no evidence that the Veteran received chronic treatment for either ankle after separating from service. 

The Board finds that this rationale is supported by the evidence of record. Indeed, a review of the Veteran’s extensive post-service treatment records indicates that they are absent for any diagnosis, complaints, or treatment of a bilateral ankle condition after discharge. See AZ, 731 F.3d at 1303. Moreover, the Veteran’s January 2000 VA treatment records indicate that his ankle range of motion was within normal limits. As such, the VA examiner’s opinion is highly probative with respect to this issue. Ultimately, the Board finds that the preponderance of the evidence is against a finding of service connection. As such, the claims must be denied. 

Increased Rating

The Veteran incurred a left knee injury during service and underwent a partial meniscectomy in 1995. In a September 1996 rating decision, the Veteran was awarded service connection for a left knee ligament injury with traumatic arthritis, effective September 1, 1996, rated under Diagnostic Code 5010 at 10 percent disabling. Subsequently, the RO rated the Veteran’s left knee disability under Diagnostic Codes 5010-5260 in April 2007. In the March 2019 rating decision currently on appeal, the RO recharacterized the left knee disability as status post meniscectomy left knee, to include traumatic arthritis and scar, under Diagnostic Codes 5003-5260 and continued the 10 percent disability evaluation. 

Disability evaluations are determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. § Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during active military service and their residual conditions in civil occupations. 38 U.S.C. § 1155; 38 C.F.R. § § 4.1.

Each disability must be considered from the point of view of the veteran who is working or seeking work. 38 C.F.R. § § 4.2. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § § 4.7.

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. In the selection of code numbers assigned to disabilities, injuries will generally be represented by the number assigned to the residual condition on the basis of which the rating is determined. With injuries and diseases, preference is to be given to the number assigned to the injury or disease itself; if the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen. 38 C.F.R. § § 4.27. Here, the Veteran is rated under Diagnostic Codes 5003 (for degenerative arthritis) and 5260 (for limitation of flexion of the leg). 

Normal range of motion of the knee is to zero degrees extension and to 140 degrees flexion. See 38 C.F.R. § § 4.71a, Plate II.

Diagnostic Code 5010 represents arthritis due to trauma, substantiated by x-ray findings, which in turn is to be rated under Diagnostic Code 5003 as degenerative arthritis. 38 C.F.R. § § 4.71a. Degenerative arthritis established by x-ray findings will be rated based on limitation of motion under the appropriate diagnostic code(s) for the specific joint(s) involved. When, however, the limitation of motion of the specific joint(s) involved is noncompensable under the appropriate diagnostic code(s), a 10 percent rating is assigned for each major joint. 

Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent evaluation is warranted if there is x-ray evidence of involvement of two or more major joints or two or more minor joint groups and a 20 percent evaluation is authorized if there is x-ray evidence of involvement of two or more major joints or two or more minor joint groups and there are occasional incapacitating exacerbations. Id., Diagnostic Code 5003.

Note 1 provides that the 20 percent and 10 percent ratings based on x-ray findings, above, will not be combined with ratings based on limitation of motion. 

Under Code 5260, which contemplates limitation of leg flexion, a 0 percent rating is warranted for flexion limited to 60 degrees; a 10 percent rating is warranted for flexion limited to 45 degrees; a 20 percent rating is warranted for flexion limited to 30 degrees; and a 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. § § 4.71a, Diagnostic Code 5260. 

Under Code 5261, which contemplates limitation of extension of the leg, a 0 percent rating is warranted for extension limited to 5 degrees; a 10 percent rating is warranted for extension limited to 10 degrees; a 20 percent rating is warranted for extension limited to 15 degrees; a 30 percent rating is warranted for extension limited to 20 degrees; a 40 percent rating is warranted for extension limited to 30 degrees; and a 50 percent rating is warranted for extension limited to 45 degrees. 38 C.F.R. § § 4.71a, Diagnostic Code 5261. 

The Veteran’s VA treatment notes reflect that he reported ongoing and worsening left knee pain, as well as swelling and “locking.” He reported regularly wearing a hard knee brace on his left knee, as well as a cane. The knee condition makes it difficult for the Veteran to stand, walk, or climb for prolonged periods of time. 

On VA examination in August 2018, the range of motion in the Veteran’s left knee was from 5 to 130 degrees, with evidence of painful motion that did not cause functional loss during examination. He was able to repeat the motion three times, and the range of motion was the same after those repetitions. The examination indicated that there was mild tenderness to the medial and lateral joint insertion sites, and mild tenderness to the posterior knee. On testing, the left knee had normal stability and full strength. No ankylosis or muscle atrophy were present.

The Board has considered pertinent case law, such as Correia v. McDonald, 28 Vet. App. 158 (2016), which holds that the final sentence of 38 C.F.R. § § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and non-weight bearing, and, if possible, with range of motion measurements of the opposite undamaged joint. The Board finds that the April 2019 VA examination contains sufficient findings under Correia. The examination report reflects that the right knee, the opposite undamaged joint, was tested for range of motion, and that weight-bearing and non-weight bearing testing was performed. The examination report also indicates that the Veteran’s knees were evaluated for pain on both active and passive motion. 

The Board has also considered whether a higher rating is warranted under Diagnostic Code 5003. However, the Veteran is not eligible for a higher, 20 percent rating under Diagnostic Code 5003 because that rating only applies in the absence of limitation of motion. In this case, the Veteran’s currently assigned ratings specifically accounted for objective evidence of painful motion of his left knee. Moreover, while the Board acknowledges the Veteran’s symptoms of pain and swelling, there is no evidence of incapacitating exacerbations of the arthritis in his knee.

Further, the evidence does not support higher ratings for limitation of flexion or extension for the left knee under Diagnostic Codes 5260 or 5261. During the appeal period, the Veteran’s left knee had limitation of flexion to no worse than 130 degrees and limitation of extension to no worse than 5 degrees, even when considering limitation of motion caused by pain. See DeLuca v. Brown, 8 Vet. App. 202, 207 (1995); VAOPGCPREC 9-98. In addition, the current rating for the left knee specifically accounts for painful motion under 38 C.F.R. § § 4.59. In summary, higher ratings under Diagnostic Codes 5003-5260 are not warranted for the left knee. 

The Board has also considered whether the assignment of a higher rating is available under other Diagnostic Codes, including Diagnostic Codes 5262, 5263, and 5256. However, these Diagnostic Codes do not apply as there has been no evidence indicating the malunion or nonunion of the tibia or fibula, genu recurvatum, or ankylosis, respectively. 

However, the Board recognizes that on the Veteran’s August 2018 examination, the examiner noted that the Veteran had a history of recurrent effusion of the left knee. Although the examiner did not note any dislocation of the meniscus, the examiner found a meniscal tear was present in the left knee, with frequent episodes of joint locking, joint pain, and effusion. The examiner also made note of the Veteran’s meniscectomy in the mid-1990s, although the examiner did not note residual signs or symptoms due to the meniscectomy. In addition, the examination report reflected that there was evidence of pain on weightbearing. 

Generally, the evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § § 4.14. However, the U.S. Court of Appeals for Veterans Claims recently held that evaluation of a knee disability under Codes 5257 or 5261 (and by Code 5260) or both does not, as a matter of law, preclude separate evaluation of a meniscal disability of the same knee under Codes 5258 or 5259. Lyles v. Shulkin, 29 Vet. App. 107 (2017). Entitlement to a separate evaluation depends on whether the manifestations of disability for which a separate evaluation is being sought have already been compensated by an assigned evaluation under a different Diagnostic Code. In the context of evaluating musculoskeletal disabilities based on limitation of motion, a manifestation of disability has not been compensated, for separate evaluation and pyramiding purposes, if that manifestation did not result in an elevation of the evaluation under 38 C.F.R. § §§ 4.40 and 4.45 pursuant to the principles set forth in DeLuca. See id. 

As the Veteran’s left knee disability involves an injury to his meniscus, also known as the semilunar cartilage, it is also appropriate to consider 38 C.F.R. § § 4.71a, Diagnostic Codes 5258 and 5259, which address disorders of the semilunar cartilage. Diagnostic Code 5258 provides for a 20 percent evaluation on the basis of dislocated semilunar cartilage with frequent episodes of “locking,” pain, and effusion into the joint. 38 C.F.R. § § 4.71a, Diagnostic Code 5258. This is the only available evaluation under Diagnostic Code 5258. Diagnostic Code 5259, on the other hand, provides for a 10 percent evaluation based on symptomatic removal of the semilunar cartilage. 38 C.F.R. § § 4.71a, Diagnostic Code 5259. This is the only available evaluation under Diagnostic Code 5259. 

The left knee surgery that the Veteran underwent in 1995 included partial removal of the semilunar cartilage. Although the VA examiner did not note residual symptoms due to the Veteran’s meniscectomy during the August 2018 VA examination, the Veteran has consistently complained of symptoms such as locking in his left knee. See, e.g., May 1996 Report of Medical History. Affording the benefit of the doubt to the Veteran, the Board finds that his partial meniscectomy has been symptomatic. The partial cartilage removal and its residual symptoms raise a question as to whether it is appropriate to assign a separate 10 percent rating under Diagnostic Code 5259. The Board notes that because no dislocation of the meniscus was noted, a rating of 20 percent under Diagnostic Code 5258 is not warranted and thus not at issue. 

(Continued on the next page)

 

The 10 percent rating that the RO assigned for the Veteran’s left knee disability addresses arthritis in that knee. Diagnostic Code 5003 contemplates painful motion but does not contemplate symptoms such as frequent episodes of locking or effusion. The Board finds that this manifestation of the Veteran’s left knee disability does not overlap with and has not been compensated by the 10 percent evaluation for painful motion under Diagnostic Code 5003. As such, the Board finds that the assignment of a separate 10 percent evaluation, but no higher, is warranted pursuant to Diagnostic Code 5259.

 

 

M. Tenner

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Rademacher, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § § 20.1303.