﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 181120-75975
DATE: January 29, 2021

ORDER

Entitlement to service connection for diabetes mellitus due to herbicide exposure is granted.

Entitlement to service connection for gastroparesis is granted.

Entitlement to service connection for erectile dysfunction, to include as secondary to diabetes mellitus is granted.

Entitlement to service connection for peripheral neuropathy of the right lower extremity, to include as secondary to diabetes mellitus is granted.

Entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to diabetes mellitus is granted.

Entitlement to service connection for peripheral vascular disease of the right lower extremity, to include as secondary to diabetes mellitus is denied.

Entitlement to service connection for peripheral vascular disease of the left lower extremity, to include as secondary to diabetes mellitus is denied.

Entitlement to service connection for diabetic retinopathy (claimed as vision loss), to include as secondary to diabetes mellitus is granted.

Entitlement to service connection for high cholesterol is denied.

Entitlement to service connection for rheumatoid arthritis is denied. 

REMANDED

Entitlement to service connection for irritable bowel syndrome is remanded. 

Entitlement to service connection for memory loss is remanded.

Entitlement to service connection for mood swings is remanded.

Entitlement to service connection for a sleep disorder is remanded.

FINDINGS OF FACT

1. The evidence is sufficient to show that the Veteran was exposed to herbicides in service.

2. The evidence is sufficient to show that the Veteran’s gastroparesis is due to his service-connected diabetes mellitus. 

3. The evidence is sufficient to show that the Veteran’s erectile dysfunction is due to his service-connected diabetes mellitus. 

4. The evidence is sufficient to show that the Veteran’s peripheral neuropathy of the right lower extremity is due to his service-connected diabetes mellitus. 

5. The evidence is sufficient to show that the Veteran’s peripheral neuropathy of the left lower extremity is due to his service-connected diabetes mellitus. 

6. The evidence is insufficient to show that the Veteran’s peripheral vascular disease of the right lower extremity is related to service or secondary to his service-connected diabetes mellitus. 

7. The evidence is insufficient to show that the Veteran’s peripheral vascular disease of the left lower extremity is related to service or secondary to his service-connected disability. 

8. The evidence is sufficient to show that the Veteran’s diabetic retinopathy is due to his service-connected diabetes mellitus.

9. High cholesterol is a laboratory finding and is not a disability for which VA compensation benefits are payable. 

10. The evidence is insufficient to shows that the Veteran’s rheumatoid arthritis had its onset in service, manifested to a compensable degree within one year of separation, or is otherwise related to service. 

CONCLUSIONS OF LAW

1. The criteria for service connection for diabetes mellitus due to herbicide exposure have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for gastroparesis have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

3. The criteria for service connection for erectile dysfunction have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

4. The criteria for service connection for peripheral neuropathy of the right lower extremity have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

5. The criteria for service connection for peripheral neuropathy of the left lower extremity have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

6. The criteria for service connection for peripheral vascular disease of the right lower extremity have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

7. The criteria for service connection for peripheral vascular disease of the left lower extremity have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

8. The criteria for service connection for an eye condition, to include as secondary to diabetes mellitus have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

9. The criteria for service connection for high cholesterol have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

10. The criteria for service connection for rheumatoid arthritis have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty from December 1973 to November 1975. 

A rating decision was issued under the legacy system in February 2018. In May 2018 the Veteran opted into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a Rapid Appeals Modernization Program (RAMP) election form and selecting the supplemental claim lane. The Agency of Original Jurisdiction (AOJ) issued a RAMP supplemental claim decision in November 2018, which is the decision on appeal.

In a November 2018 correspondence, the Veteran elected the Hearing docket. In August 2020 he withdrew the hearing request. Therefore, the Board may only consider the evidence of record at the time of the November 2018 rating decision, as well as any evidence submitted by the Veteran or his representative within 90 days following receipt of the withdrawal. 38 C.F.R. § 20.302(b).

Service Connection

To establish service connection for a disability, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

For certain chronic disorders, such as arthritis, service connection may be granted if the disease becomes manifest to a compensable degree within one year following separation from service. See 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309.

When a disease listed at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be established on a secondary basis for a disability which is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show that a current disability exists and that the current disability was either caused by or aggravated by a service-connected disability. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995).

Service connection may also be granted for specific diseases associated with exposure to herbicide agents. 38 C.F.R. § 3.309(e). If a veteran was exposed to a herbicide agent during active military, naval, or air service, the following diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, despite any lack of evidence of such disease during service provided that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied: AL amyloidosis; chloracne or other acneform disease consistent with chloracne; Type II diabetes; Hodgkin's disease; ischemic heart disease; all chronic B-cell leukemias; multiple myeloma; non-Hodgkin's lymphoma; Parkinson's disease; acute and subacute peripheral neuropathy; porphyria cutanea tarda; prostate cancer; respiratory cancers; and soft-tissue sarcoma.

A Veteran who, during active military, naval, or air service, served in the Republic of Vietnam (Vietnam) during the period beginning on January 9, 1962, and ending on May 7, 1975 shall be presumed to have been exposed during such service to an herbicide agent unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 U.S.C. § 1116(f); 38 C.F.R. § 3.307(a)(6). For the purposes of § 3.307, the term herbicide agent means a chemical in an herbicide used in support of the United States and allied military operations in Vietnam during the Vietnam era. 38 C.F.R. § 3.307(a)(6)(i).

The Veteran served during the presumptive time period. However, the evidence is conflicting as to whether the Veteran served in the Republic of Vietnam. The Veteran’s service treatment records and personnel records do not show evidence of service on the landmass or waterways of Vietnam. However, the Veteran’s personnel records indicate that he served in the 3d Reconnaissance Battalion, 3d Marine Division, Fleet Marine Forces and participated in support of operation Koh Tang, Cambodia from May 14, 1975 to May 18, 1975. 

On a July 2005 Application for Compensation, the Veteran reported he served in Vietnam from July 1, 1975 to July 30, 1975. The Veteran reported that he served in the Republic of South Vietnam and was involved in the overall evacuation of Saigon called “Operation Eagle Pull.” See July 2005 Correspondence. 

In December 2005, he submitted a web article titled “The Final Curtain, 1973-1975” from the Department of the Navy – Naval Historical Center detailing the history of war events occurring in Southeast Asia during the Veteran’s period of service. The article describes operation Eagle Pull as a mission executed in Cambodia on April 12, 1975. The article noted the USS Hancock was involved in the execution of the mission. The article then describes the campaign for a final evacuation of American and allied personnel from South Vietnam. The task force was joined by the USS Hancock carrying Navy, Marine, and Air Force helicopters, and the mission was ultimately completed on April 30, 1975. 

In an April 2006 correspondence, the Veteran reported that he was stationed in Vietnam from September 1, 1975 to September 30, 1975. However, in a June 2018 correspondence, the Veteran reported that the was on the USS Hancock for 90 days off the coast of Vietnam in 1975 from approximately January and “for sure February, March, and April of 1975.” 

In support of the Veteran’s report of service in Vietnam, the Veteran’s attorney also submitted records from the National Archives and Records Administration discussing the plans for evacuation operations in Saigon. See August 2020 Appellate Brief. Although the records do not explicitly establish the Veteran’s participation, they suggest that the 3d Marine Division – the Veteran’s division – had some involvement in mission. Notably the Veteran’s personnel records also indicate he was in the reconnaissance unit and had a military occupational specialty of mortarman. As such, the Board finds the Veteran’s statements consistent with the circumstances and conditions of his service as well as the historical records provided. Herbicide exposure is conceded. 

1. Entitlement to service connection for diabetes mellitus type II due to herbicide exposure.

The Veteran claims entitlement to service connection for diabetes mellitus. VA treatment records show the Veteran had a diagnosis during the appeal period. As herbicide exposure is presumed and diabetes mellitus is a presumptive disability under 38 C.F.R. § 3.309(e), entitlement to service connection for diabetes mellitus is granted. 

2. Entitlement to service connection for gastroparesis. 

The Veteran claims entitlement to service connection for gastroparesis. A November 2016 VA treatment note indicates that the Veteran had a history of diabetic gastroparesis. As the decision herein grants service connection for diabetes, the evidence is sufficient to show that the Veteran’s gastroparesis is secondary to a service-connected disability. Entitlement to service connection for gastroparesis is granted. 

3. Entitlement to service connection for erectile dysfunction, to include as secondary to diabetes mellitus. 

The Veteran claims entitlement to service connection for erectile dysfunction secondary to diabetes mellitus. A July 2005 VA treatment note indicates the Veteran had been recently hospitalized for diabetic ketoacidosis. He reported that he was currently having problems erectile dysfunction. The medical service provider noted that the Veteran was not aware that high blood sugar contributes to his erectile dysfunction. As the decision herein grants service connection for diabetes, the evidence is sufficient to show that the Veteran’s erectile dysfunction is secondary to a service-connected disability. Entitlement to service connection for erectile dysfunction is granted. 

4. Entitlement to service connection for peripheral neuropathy of the right lower extremity, to include as secondary to diabetes mellitus.

The September 2005 VA examination shows a diagnosis of peripheral neuropathy of the right lower extremity. A September 2016 VA treatment note indicates that the Veteran has a diagnosis of peripheral neuropathy associated with type II diabetes. As the decision herein grants service connection for diabetes, the evidence is sufficient to show that the Veteran’s peripheral neuropathy of the right lower extremity is secondary to a service-connected disability. Entitlement to service connection for peripheral neuropathy of the right lower extremity is granted. 

5. Entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to diabetes mellitus

The September 2005 VA examination shows a diagnosis of peripheral neuropathy of the left lower extremity. A September 2016 VA treatment note indicates that the Veteran has a diagnosis of peripheral neuropathy associated with type II diabetes. As the decision herein grants service connection for diabetes, the evidence is sufficient to show that the Veteran’s peripheral neuropathy of the left lower extremity is secondary to a service-connected disability. Entitlement to service connection for peripheral neuropathy of the left lower extremity is granted. 

6. Entitlement to service connection for peripheral vascular disease of the right lower extremity. 

7. Entitlement to service connection for peripheral vascular disease of the left lower extremity.

The Veteran claims entitlement to service connection for peripheral vascular disease of the bilateral lower extremities to include as secondary to diabetes mellitus. A January 2018 VA treatment record shows the Veteran has a current diagnosis of peripheral vascular disease. The issue that remains disputed is whether the Veteran’s peripheral vascular disease is related to service or secondary to a service-connected disability. The preponderance of the evidence is against the claim. 

Service treatment records are silent for complaints of or treatment for peripheral vascular disease. Post service treatment records first show a diagnosis of peripheral vascular disease in February 2013. 

The Veteran was not afforded a VA examination because the evidence was insufficient to trigger an examination. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i).

The only evidence suggesting a relationship between the Veteran’s peripheral vascular disease and service or a service-connected disability are his statements, and the Veteran is not competent to provide an opinion on issues requiring medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis).

In sum, service connection for peripheral vascular disease is denied. As the preponderance of the evidence is against the Veteran’s claim, the doctrine of reasonable doubt does not apply. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

8. Entitlement to service connection for an eye condition, to include as secondary to diabetes mellitus. 

A February 2013 VA treatment note indicates that the Veteran has diagnosis of diabetic retinopathy. As the decision herein grants service connection for diabetes, the evidence is sufficient to show that the Veteran’s diabetic retinopathy is secondary to a service-connected disability. Entitlement to service connection for diabetic retinopathy is granted. 

9. Entitlement to service connection for high cholesterol.

The Veteran is seeking service connection for high cholesterol. However, elevated cholesterol is not recognized as a disability for VA benefits purposes. 38 U.S.C. §§ 101(16), 105(a); 38 C.F.R. § 3.303(c); 61 Fed. Reg. 20, 440, 20,445 (May 7, 1996) (diagnoses of hyperlipidemia, elevated triglycerides, and elevated cholesterol are laboratory results and are not, in and of themselves, disabilities). 

The term “disability” refers to impairment of earning capacity. Allen v. Brown, 7 Vet. App. 439 (1995). There is no evidence of record suggesting that the Veteran's elevated cholesterol causes him any impairment of earning capacity. While elevated cholesterol may be a risk factor for disability or evidence of an underlying disability, the Veteran has not alleged that he has a diagnosed disability due to elevated cholesterol. In the absence of a current disability, service connection cannot be granted for such disability. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Accordingly, because the preponderance of the evidence is against a finding that high cholesterol is a disability for VA benefit purposes, the claim for entitlement to service connection for high cholesterol must be denied. 38 U.S.C. § 5107 (b); 38 C.F.R. §§ 3.102, 3.303; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

10. Entitlement to service connection for rheumatoid arthritis is denied.

The Veteran claims entitlement to service connection for rheumatoid arthritis. A June 2017 VA treatment note indicates the Veteran had a diagnosis of rheumatoid arthritis that started four months earlier while he was living in Thailand. As the Veteran has a current diagnosis, the issue that remains disputed is whether the Veterans arthritis had its onset in service or manifested to a compensable degree within one year of separation. The preponderance of evidence is against the claim. 

Service treatment records are silent or complaints of or treatment for rheumatoid arthritis. In addition, there was no evidence of rheumatoid arthritis during the Veteran’s September 2005 VA examination. Thus, service connection on a direct basis is not warranted. 

The Board has also considered whether the service connection is warranted on a presumptive basis. However, the evidence does not show – and the Veteran does not assert – that his rheumatoid arthritis manifested to a compensable degree within one year of separation. Specifically, the August 2016 VA treatment record indicates that the Veteran’s rheumatoid arthritis was “newly diagnosed.” Thus, presumptive service connection based on chronic disability is not warranted. See 38 C.F.R. §§ 3.307, 3.309.

The Veteran was not afforded a VA examination because the evidence was insufficient to trigger an examination. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i).

The only evidence suggesting a relationship between the Veteran’s rheumatoid arthritis and service are his statements, and the Veteran is not competent to provide an opinion on issues requiring medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). In sum, service connection for rheumatoid arthritis is denied. As the preponderance of the evidence is against the Veteran’s claim, the doctrine of reasonable doubt does not apply. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

1. Entitlement to service connection for irritable bowel syndrome.

VA treatment records show a current diagnosis of irritable bowel syndrome. An October 1975 service treatment note indicates the Veteran complained of gastric pain. Thus, the evidence is sufficient to trigger the need for a VA examination. A duty to assist error occurred prior to the November 2018 rating decision. A remand for a VA examination is required. 

2. Entitlement to service connection for memory loss is remanded.

3. Entitlement to service connection for mood swings is remanded.

4. Entitlement to service connection for a sleep disorder is remanded.

Although the details of the Veteran’s injury are not clear, an April 1974 service treatment note indicates that the Veteran was treated for removal of stitches from a head laceration that was approximately ½ inch long. Service treatment records also indicate that in 1975 the Veteran sought treatment for a psychological addiction to lysergic acid diethylamide (LSD). He was ultimately discharged from service as a result of his addiction. VA treatment records indicate the Veteran has an acquired psychiatric disorder that affect his short-term memory, sleep, and mood. See September 2005 VA examination. Thus, the evidence is sufficient to trigger the need for a VA examination. Thus, a duty to assist error occurred prior to the November 2018 rating decision. A remand for a VA examination to determine whether the Veteran’s psychiatric symptoms had their onset in service is required. 

The matters are REMANDED for the following action:

1. Arrange for the Veteran to undergo a VA examination to determine the current nature and severity of his irritable bowel syndrome. The examiner should issue a medical opinion as to whether it is at least as likely as not (50 percent probability or higher) the Veteran’s irritable bowel syndrome had its onset in service, to include as related to complaints of gastric pain in service, as shown in his service treatment records dated in October 1975. 

The examiner is asked to explain the reasons behind any opinions expressed and conclusions reached.

2. Arrange for the Veteran to undergo a VA examination to determine the current to determine the current nature and severity of his mood swings, memory loss, and sleep disability. The examiner should issue medical opinions as to whether it is at least as likely as not (50 percent probability or higher) the Veteran’s symptoms had their onset in service or are otherwise related to service, include as due to LSD abuse or the ½ inch laceration to the head that was treated in April 1974. 

The examiner is asked to explain the reasons behind any opinions expressed and conclusions reached. 

 

R. FEINBERG

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J.A. Williams, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.